IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and )
LABORERS' WELFARE FUND OF THE )
HEALTH AND WELFARE DEPARTMENT )
OF THE CONSTRUCTION AND GENERAL )
LABORERS' DISTRICT COUNCIL OF )
CHICAGO AND VICINITY, THE CHICAGO )     Judge: Andrea R. Wood
LABORERS' DISTRICT COUNCIL RETIREE )
HEALTH AND WELFARE FUND and JAMES )     Case No. 16-cv-10042
S. JORGENSEN, Administrator of the Funds, )
                                         )
              Plaintiffs,                )
     v.                                  )
                                         )
ERNEST HERLT, individually and d/b/a     )
CBS EXCAVATING & SNOWPLOWING             )
                                         )
              Defendant.                 )

## MOTION FOR ENTRY OF DEFAULT JUDGMENT IN A SUM CERTAIN

Now come Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health

and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity Laborers' District Council Retiree Health and Welfare Fund and James S. Jorgensen

(collectively referred to hereinafter as the "Funds"), by and through their attorney, G. Ryan

Liska, and hereby request this Court for an entry of default judgment in sum certain pursuant to

Fed. R. Civ. P. 55(b) on Counts I, II, III and IV of Plaintiffs' Complaint against Defendant

Ernest Herlt, individually and d/b/a CBS Excavating & Snowplowing, (hereinafter "Company").

In support of this Motion, Plaintiffs state as follows:

1.      Funds filed their Complaint on October 26, 2016 seeking to compel Company, as

set forth in Counts I and II, to submit payment of amounts found due and owing pursuant to an

audit of the Company's books and records for the period of August 1, 2010 to December 31,

2012 .  Funds also sued to compel the Company, as set forth in Counts III and IV to submit its

benefits and dues reports and contributions for the time period of June, 2013 forward.

1

2.     Summons and Complaint was served on Company on November 1, 2016.  A true and accurate copy of the Affidavit of Service is attached hereto as Exhibit A.

3.     Company has failed to answer or otherwise plead, and accordingly is in default.

4.     Pursuant to Section 502(g)(2) of the Employee Retirement Income Security Act ("ERISA"), as amended, 29 U.S.C. § 1132(g)(2), Section 301 of the Labor Management Relations Act ("LMRA"), as amended, 29 U.S.C. §185, and the Agreement, the Funds' respective Agreements and Declarations of Trust, Funds are entitled to judgment in the amount of $200,861.74 against Defendant Ernest Herlt, individually and d/b/a CBS Excavating & Snowplowing on Counts I, II, III and IV  as follows:

  A. As set forth in the Affidavit of Michael Christopher filed contemporaneously herewith and attached hereto as Exhibit B, $70,440.37 in unpaid benefit contributions, interest, liquidated damages and audit fees is owed by the Company as revealed by an audit of the Company's books and records for period August 1, 2010 through December 31, 2012 and accumulative liquidated damages which stem from the late payment of monthly fringe benefit and union dues reports.  See Exhibit B, ¶ 5 and 6;

  B. As set forth in the Affidavit of Michael Christopher filed contemporaneously herewith and attached hereto as Exhibit B, $128,594.87 in unpaid benefit contributions and liquidated damages is owed by the Company as revealed by the Company's monthly contribution reports for the period June 2013 through November 2016 which stem from the late submission and failure to pay monthly fringe benefit and union dues reports.  See Exhibit B, ¶ 5 and 6;

C.     As set forth in the Declaration of G. Ryan Liska, filed contemporaneously herewith and attached hereto as Exhibit C, $1,361.50 in attorneys' fees and costs of $465.00.

5.     There is no just reason for delay and judgment should be entered against Defendant and in favor of the Funds pursuant to Fed. R. Civ. P. 55(b) on Counts I, II, III and IV of Funds' Complaint.

WHEREFORE, Plaintiffs respectfully request that Defendant Ernest Herlt, individually and d/b/a CBS Excavating & Snowplowing be found in default and judgment be entered in Plaintiffs' favor and against Defendant, on Counts I, II, III and IV of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 55(b) in the amount of $200,861.74 as follows:

A.     For $70,440.37 in unpaid benefit contributions, interest, and liquidated damages audit fees representing amounts due as revealed to the audit of Defendant's books and records for period August 1, 2010 through December 31, 2012 and accumulative liquidated damages stemming from the late payment of monthly fringe benefit and union dues reports;

B.     For $128,594.87 in unpaid benefit contributions and liquidated damages representing amounts due as revealed by the Company's monthly contribution reports for the period June 2013 through November 2016;

C.     For $1,361.50 representing attorneys' fees and costs of $465.00; and

D.     Ordering Defendant to post and maintain a fringe benefit bond in accordance with the terms and conditions of the collective bargaining agreement and pay post judgment interest in all amounts due from the date of judgment until the judgment is satisfied.

E. Entering judgment without prejudice to the Funds' right to audit Ernest Herlt, individually and d/b/a CBS Excavating & Snowplowing's books and records for the period of January 1, 2013 forward and to collect any amounts revealed as due and owing therein; and

F. Any additional equitable relief this Court deems appropriate.

May 1, 2017

Respectfully submitted,

Laborers' Pension Fund, et al.

By: /s/ G. Ryan Liska

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540
(312) 692-1489 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused a copy of the foregoing Motion for Entry of Default Judgment in Sum Certain pursuant to Rule 55(b) and proposed Order to be served upon the following person via mail this 1st day of May, 2017.

CBS Excavating & Snowplowing
c/o Ernest Herlt
215 Seafarer Drive
Third Lake, IL 60030

/s/ G. Ryan Liska

FILE COPY

# CERTIFICATE OF SERVICE

Case #: 16-cv-10042

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department, etc., et al.

Plaintiff

vs.

Ernest Herlt, individually and d/b/a CBS Excavating & Snowplowing

Defendant

---

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all the times herein mentioned was a citizen of the United States, over the age of 18, not a party to nor interested in the above entitled action, is competent to be witness therein, and that I served copies of the:

## Summons & Complaint

PARTY SERVED: ERNEST HERLT, INDIVIDUALLY AND D/B/A CBS EXCAVATING & SNOWPLOWING

METHOD OF SERVICE: Personal Service - By personally delivering copies to ERNEST HERLT.

DATE & TIME OF DELIVERY: 11/1/2016 at 8:10 AM

ADDRESS, CITY AND STATE: 215 SEAFARER DRIVE, THIRD LAKE, IL 60030

DESCRIPTION: White, Male, 50, 5'10", 200 lbs, Brown hair.

I declare under penalties of perjury that the information contained herein is true and correct.

Executed on the 1st day of November, 2016.

Richard Gerber, Lic # 117-001119
Judicial Attorney Services, Inc.
2100 Manchester Rd., Ste 505
Wheaton, IL 60187
(630) 221-9007

Tracking #: 337746



CLIENT: Laborers' Pension Fund
FILE #:

EXHIBIT
A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LABORERS' PENSION FUND and           )
LABORERS' WELFARE FUND OF THE        )
HEALTH AND WELFARE DEPARTMENT        )
OF THE CONSTRUCTION AND GENERAL      )
LABORERS' DISTRICT COUNCIL OF        )
CHICAGO AND VICINITY, THE CHICAGO    )      Judge: Andrea R. Wood
LABORERS' DISTRICT COUNCIL RETIREE   )
HEALTH AND WELFARE FUND and JAMES    )      Case No. 16-cv-10042
S. JORGENSEN, Administrator of the Funds, )
                                     )
                Plaintiffs,          )
        v.                           )
                                     )
ERNEST HERLT, individually and d/b/a )
CBS EXCAVATING & SNOWPLOWING         )
                                     )
                Defendant.           )

## AFFIDAVIT OF MICHAEL CHRISTOPHER

MICHAEL CHRISTOPHER, being first duly sworn on oath, deposes and states as follows:

1.      I am a Field Representative employed by the Laborers' Pension Fund and the

Laborers' Welfare Fund of the Construction and General Laborers' District Council of Chicago

and Vicinity and Laborers' District Council Retiree Health and Welfare Fund (hereinafter

collectively referred to as the "Funds"), Plaintiffs in the above-referenced action.  My

responsibilities include oversight of the collection of amounts owed by Defendant Ernest Herlt,

individually and d/b/a CBS Excavating & Snowplowing (hereinafter "Company").  This

Affidavit is submitted in support of the Laborers' Funds' Motion for Entry of Default Judgment

in a Sum Certain Pursuant to Rule 55(b).  I have personal knowledge regarding the statements

contained herein.

1



2.     On August 9, 2004, the Company signed an Independent Construction Industry Collective Bargaining Agreement with the Construction and General Laborers' District Council of Chicago and Vicinity. A true and accurate copy of the Agreement is attached hereto as Exhibit B-1. Pursuant to the terms of the Agreement, the Company is bound to the terms of the relevant collective bargaining agreement "Collective Bargaining Agreement" incorporated by reference in the Agreement and the Funds' respective Agreements and Declarations of Trust.

3.     Pursuant to agreement, the Funds have been duly authorized to act as collection agents on behalf of the District Council for union dues owed to the District Council. Company is required to submit dues reports and dues payments by the tenth day of the following month. Payments which are not received by that date are assessed liquidated damages in the amount of 10 percent of the principal amount of delinquent dues.

4.     The Agreement, the Collective Bargaining Agreement, and the Funds' Declarations of Trust to which the Company is bound require that the Company submit benefit reports and contribution payments by the tenth day of the following month. Payments which are not received within thirty days of this date are assessed liquidated damages in the amount of 20 percent of the principal amount of delinquent contributions, and interest at a rate of 12% from the date of delinquency forward. A copy of the Collective Bargaining Agreement is attached as Exhibit B-2; a copy of the Amended Agreement and Declaration of Trust creating the Laborers' Pension Fund is attached as Exhibit B-3; a copy of the Amended Health and Welfare Department of the Construction and General Laborers' District Council is attached as Exhibit B-4; a copy of the Declaration of Trust creating the Laborers' District Counsel Retiree Health and Welfare Fund is attached as Exhibit B-5; a copy of the Agreement and Declaration of Trust Establishing the

2

Construction and General Laborers' District Council of Chicago and Vicinity Training Trust Fund is attached hereto as Exhibit B-6.

5.  An audit of the Company's books and records was conducted for the period of August 1, 2010 through December 31, 2012. A true and accurate copy of the audit which was issued on February 7, 2014 is attached hereto as Exhibit B-7.

6.  The audit revealed the Company owed to following amounts of unpaid benefit contributions, union dues, liquidated damages, liquidated damages stemming from the Company's late payment of monthly fringe benefit and union dues reports for August 1, 2010 through and including December 31, 2012, audit costs and interest:

| | |
|---|---|
| Welfare Fund | $ 29,986.40 |
| Liquidated Damages | $ 5,997.28 |
| Accumulated Damages | $ 793.49 |
| Pension Fund | $ 21,949.60 |
| Liquidated Damages | $ 4,389.92 |
| Training Fund | $ 1,170.00 |
| Liquidated Damages | $ 234.00 |
| Union Dues | $ 2,666.62 |
| Liquidated Damages | $ 266.66 |
| LDCLMCC | $ 297.60 |
| Liquidated Damages | $ 29.76 |
| LECET | $ 173.60 |
| Liquidated Damages | $ 17.36 |
| CCA | $ 198.40 |

|                     |             |
|---------------------|-------------|
| Liquidated Damages  | $ 39.68     |
| Audit Costs         | $ 2,230.00  |
| TOTAL               | $ 70,440.37 |

7.    In addition to the audit delinquency, the Company submitted but failed to pay its monthly contribution reports for the period June 2013 through November 2016. A true and accurate copy of the contribution reports submitted by the Company to the Funds is attached as Exhibit B-8.

8.    Pursuant to the Company's Exhibit B-8 reports and the Exhibit B-9 delinquency summary of the Exhibit B-8 reports, the following amounts including liquidated damages are due:

| June 2013- Dec. 2013: | $27,331.13   |
| May 2014 - Dec. 2014: | $36,934.48   |
| May 2015 - Nov. 2015: | $32,113.26   |
| May 2016 - Nov. 2016: | $32,216.00   |
| Total:                | $128,594.87  |

FURTHER AFFIANT SAYETH NAUGHT.

Michael Christopher

Subscribed and sworn to before me
this ___ day of May, 2017.

Notary Public

"OFFICIAL SEAL"
EUGENIA MASHOS
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 09/29/2020.

4



CONSTRUCTION & GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

CBS Excavating & Snowplowing

[illegible]

Dated: August 9, 20 04

CBS Excavating and Snowplowing
(Employer)

[redacted]

FOR THE:
Bridgit R. Holt
(Print Name and Title)

By: Bridgit R. Holt V. President
(Signature)

ACCEPTED:
Laborers' Local Union No. 152

By:
CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

RECEIVED
AUG 1 0 2004
FIELD DEPT.

215 Seneca Drive
(Address)

By:
Third Lake, IL 60030
(City, State and Zip Code)

By:
847-456-0120 / 847-557-9111
(Telephone Number)

For Office Use Only:

WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

EXHIBIT
B-1

JUNE 1, 2013 TO MAY 31, 2017

# BUILDING AGREEMENT

between the

### CONCRETE CONTRACTORS ASSOCIATION
OF GREATER CHICAGO

and the

### CONSTRUCTION AND GENERAL
LABORERS' DISTRICT COUNCIL,
OF CHICAGO AND VICINITY

1



EXHIBIT
B-2

INDEX

| Article | | Page |
|---|---|---|
| | TERM OF CONTRACT | 5 |
| I | EQUAL OPPORTUNITY | 5 |
| II | HOURS AND OVERTIME | 5 |
| | Paragraph 1 | 5 |
| | Paragraph 2 | 6 |
| | Paragraph 3 | 6 |
| | Paragraph 4 | 6 |
| | Paragraph 5 | 6 |
| | Paragraph 6 | 6 |
| | Paragraph 7 | 6 |
| III | MULTIPLE SHIFTS | 7 |
| | Paragraph 1 | 7 |
| | Paragraph 2 | 7 |
| | Paragraph 3 | 7 |
| | Paragraph 4 | 7 |
| | Paragraph 5 | 7 |
| | Paragraph 6 | 7 |
| | Paragraph 7 | 8 |
| IV | SUNDAYS, HOLIDAYS AND ELECTION DAYS | 8 |
| | Paragraph 1 | 8 |
| | Paragraph 2 | 8 |
| | Paragraph 3 | 8 |
| | Paragraph 4 | 8 |
| V | UNION SECURITY | 8 |
| VI | CHECK-OFF & DUES DEDUCTIONS | 9 |
| | Paragraph 1 | 9 |
| | Paragraph 2 | 9 |
| | Paragraph 3 | 10 |
| | Paragraph 4 | 10 |
| | Paragraph 5 | 10 |
| | Paragraph 6 | 10 |
| VII | UNION JURISDICTION | 11 |
| VIII | WAGES | 12 |
| | Paragraph 1 | 12 |

2

| Article | | Page |
|---|---|---|
| | Paragraph 2 - Apprentice Program | 15 |
| | Paragraph 3 - Welfare | 17 |
| | Paragraph 4 - Pension | 17 |
| | Paragraph 5 - Excess Benefit Fund | 20 |
| | Paragraph 6 - Supervisors | 20 |
| | Paragraph 7 | 22 |
| | Paragraph 8 | 22 |
| | Paragraph 9 | 22 |
| | Paragraph 10 | 22 |
| | Paragraph 11 - Special Rules for Bonding | 22 |
| | Paragraph 12 - Out of Town Work | 22 |
| | Paragraph 13 - Withdrawal of Employee | 23 |
| IX | BONDING | 23 |
| X | INDUSTRY FUND | 24 |
| | Paragraph 1 | 24 |
| | Paragraph 2 | 24 |
| | Paragraph 3 | 25 |
| XI | PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS | 25 |
| | Paragraph 1 | 25 |
| | Paragraph 2 | 29 |
| | Paragraph 3 | 29 |
| | Paragraph 4 | 29 |
| | Paragraph 5 | 30 |
| | Paragraph 6 | 30 |
| | Paragraph 7 | 30 |
| | Paragraph 8 - Hiring Hall | 30 |
| | Paragraph 9 - Key Man | 30 |
| XII | STEWARDS | 31 |
| | Paragraph 1 | 31 |
| | Paragraph 2 | 31 |
| | Paragraph 3 | 31 |
| | Paragraph 4 | 31 |
| XIII | REPORTING FOR WORK | 32 |
| | Paragraph 1 | 32 |
| | Paragraph 2 | 33 |
| | Paragraph 3 - Discipline for Quitting | 33 |

3

| Article | | Page |
|---|---|---|
| XIV | PAYDAY | 33 |
| | Paragraph 1 | 33 |
| | Paragraph 2 | 33 |
| XV | BRANCHES OF WORK | 34 |
| | Paragraph 1 | 34 |
| | Paragraph 2 | 34 |
| | Paragraph 3 | 34 |
| | Paragraph 4 - Recognition of Bargaining | |
| | Representative | 34 |
| | Paragraph 4(a) - Branches of Work | |
| | Covered Herein | 35 |
| | Paragraph 5 - Work Not Included | 46 |
| | Paragraph 6 - Wrecking | 45 |
| | Paragraph 6(a) - Wrecking: | |
| | Complete Demolition | 45 |
| | Paragraph 7 - Wall Forms | 45 |
| | Paragraph 8 - Flying Forms | 45 |
| XVI | ALCOHOL AND SUBSTANCE ABUSE | 46 |
| XVII | ADJUSTMENT OF DISPUTES | 46 |
| | Paragraph 1 | 46 |
| | Paragraph 2 | 46 |
| | Paragraph 3 | 46 |
| | Paragraph 4 | 46 |
| | Paragraph 5 | 47 |
| | Paragraph 6 | 47 |
| | Paragraph 7 | 47 |
| XVIII | UNION PROTECTION | 47 |
| XIX | ACCESS TO PREMISES | 48 |
| XX | APPROVALS | 48 |
| | Paragraph 1 | 48 |
| | Paragraph 2 | 48 |
| | Paragraph 3 - Saving Clause | 49 |
| | Paragraph 4 - Employer's Warranty | 49 |
| | Paragraph 5 - Execution | 49 |
| ADDENDUM | | 51 |
| RETIREE ADDENDUM | | 56 |

4

## TERM OF CONTRACT

This AGREEMENT entered into this 1st day of June, 2013 for Cook, DuPage, Lake, Will, Grundy, Kendall, Kane, McHenry and Boone Counties by and between the CONCRETE CONTRACTORS' ASSOCIATION OF GREATER CHICAGO, hereinafter referred to as Employer, first party, and CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, for and on behalf of its affiliated local unions, hereinafter referred to as the UNION, of the second party, shall remain in full force and effect until 11:59 p.m. on May 31, 2017.

If either party wishes to modify this Agreement, it shall serve written notice by certified or registered mail, upon the other party not less than sixty days prior to May 31, 2017 of its intent to begin negotiations for a new Agreement. In the absence of the service of such notice, this Agreement shall automatically renew itself, together with all amendments and improvements as negotiated after said initial expiration date, by and between the parties in area-wide bargaining, from year to year thereafter.

### Article I
### EQUAL OPPORTUNITY

The parties agree that Employees will not be discriminated against because of race, creed, religion, color, age, sex or national origin.

### Article II
### HOURS AND OVERTIME

Paragraph 1. When one shift is used, eight (8) hours per day, between 7:00 a.m. and 3:30 p.m. from Monday through Friday, shall constitute the normal work day and straight time shall be paid. In weeks that have designated holidays that fall during the regular work week, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour work days at straight time. The Union and the Employees must be

5

informed and the Union must give permission to the Employer in writing.

Paragraph 2. Starting times may be adjusted by the Employer, upon notice to and clearance by the Union, from 6:00 a.m. to 9:00 a.m. at straight time.

Paragraph 3. At the option of the Employer, the starting time for the day, or the first shift can be flexible. It is the Employer's responsibility to inform the Employee and obtain clearance from the Union of any change in starting time prior to quitting time the day before such change is to be effective. The first eight (8) hours' work shall be paid at straight time, the next four (4) hours at time and one-half and double time thereafter.

Paragraph 4. When one night shift is used to perform emergency work which cannot be done during the normal work day, such work shall be paid for a time and one-half for the first eight (8) hours, and double time thereafter.

Paragraph 5. Overtime rates on single shift work starting at 8:00 a.m. Saturday, shall be time and one-half for the first ten (10) hours, and thereafter double time shall be paid until 8:00 a.m. Monday, unless changed by Paragraph 2 above. During the period between December 1 and March 15, Saturday may be used as make-up day at straight time while tending masons whose Local Unions observe similar conditions; provided, however, that after forty (40) hours have been worked, time and one-half will be paid.

Paragraph 6. Double time shall be paid for all hours worked between midnight and 6:00 a.m. unless multiple shifts are working.

Paragraph 7. If a Laborer is directed to and does report to the yard prior to the normal starting time, he shall be paid the appropriate wages from the time he arrives at the yard prior to the shift until the time he returns to the yard at the end of the shift.

6

### Article III
### MULTIPLE SHIFTS

**Paragraph 1.** When it is necessary that the contractor use more than one shift for a period of three (3) or more consecutive days, the Union shall be notified twenty-four (24) hours in advance of the effective date of the starting of such multiple shift operations.

**Paragraph 2.** On Multiple Shift arrangements, the work week shall start at 12 o'clock midnight Sunday, and continue until 11:59 p.m. Friday. In no event shall regular working hours of different shifts overlap. The first shift shall begin between 6:00 a.m. and 9:00 a.m., regardless of the number of shifts employed.

**Paragraph 3.** On Saturday, other than single time shift, shift work shall start at 12:01 a.m. and the first eight (8) hours of each shift shall be paid for at the rate of time and one-half, and thereafter double time shall be paid; however, under no conditions shall more than eight (8) hours be worked at the rate of time and one-half on any one shift.

**Paragraph 4.** Where more than one shift is employed, the shifts shall not overlap and shall be paid the following hourly wage differential in addition to the base wage, effective on the dates shown below:

| Shift | |
|---|---|
| First | $1.70 |
| Second | $2.15 |
| Third | $2.40 |

**Paragraph 5.** If the Laborer does not take lunch due to the Employer's request, he shall be paid premium pay after seven and one-half (7.5) hours of work.

**Paragraph 6.** When placing monolithic concrete, Laborers that do not receive lunch shall receive double time for all hours worked in lieu of the lunch hour, not to exceed thirty (30) minutes.

7

Paragraph 7. When multiple shifts are desired, the Union shall be notified before multiple shifts are allowed.

### Article IV
### SUNDAYS, HOLIDAYS AND ELECTION DAYS

Paragraph 1. All work performed on Sundays or on the following holidays: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day, or on Mondays when such holidays are celebrated, shall be paid for at the double time rate. There shall be no work performed on Labor Day, excepting in case of dire emergency, and with the written consent of the President of the District Council.

Paragraph 2. On Election Days, the individual employed in this trade shall be allowed time not to exceed two (2) hours', without pay, for the purpose of voting, provided that the worker on the job has given notice to the Employer or his agent and has made arrangements no less than twenty-four (24) hours in advance, to receive such time off.

Paragraph 3. When a holiday falls on Monday through Friday, make-up day on Saturday shall be paid at time and one-half for the first ten (10) hours and double time thereafter.

Paragraph 4. In weeks that have designated holidays that fall during the regular workweek, but not more often than six (6) times per year, the Employer may schedule four (4) consecutive ten (10) hour work days at straight time. The Union and the Employees must be informed and the Union must give permission to the Employer in writing.

### Article V
### UNION SECURITY

All new Employees shall be required to join the Union after the expiration of seven (7) days of employment or seven (7) days after the execution date of this Agreement, whichever is later, and shall remain members

8

of the Union in good standing as a condition of continued employment.

Good standing shall mean payment of the initiation fees and both working and non-working dues uniformly required as a condition of acquiring or retaining membership in a Local Union.

Employees covered by this Agreement at the time it is signed, and who are members of the Union at that time, shall be required as a condition of continued employment, to continue membership in the Union for the duration of this Agreement.

Employees covered by this Agreement at the time it has been signed, and who are not members of the Union at that time shall be required to join the Union seven (7) days after the date of execution of this Agreement and remain members of the Union in good standing for the duration of this Agreement.

## Article VI
## CHECK-OFF & DUES DEDUCTIONS

Paragraph 1.Paragraph 1. Employers also agree to deduct from the net earnings payable to an Employee covered by this Agreement, initiation fees and quarterly Union dues insofar as permitted by state and federal laws upon receipt and in accordance with a duly executed authorization form from the Employees. Said authorization form shall not be revocable for a period of more than one (1) year or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 2. All Employers covered by this Agreement shall deduct from the wages of Employees covered by said contract, working dues approved by the Union for each hour worked and shall remit monthly to the Union office the sums so deducted, together with an accurate list of Employees from whose wages said dues were deducted and the amounts applicable to each Employee, not later than the 10th day of the month next following the month for which such deductions were made. Dues remittance

9

reports shall include a report of the hours worked and the wages earned by each Laborer.

Paragraph 3. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended, and that such deductions be made only pursuant to written assignments from each Employee on whose account such deductions are made, which assignment shall not be revocable for a period of more than one (1) year, or prior to the termination date of this Agreement, whichever occurs sooner.

Paragraph 4. The Union agrees that it will indemnify and hold harmless the Employer from any and all claims, suits, causes of action, or otherwise, as regards the creation and administration of the dues check-off established by this Article and such indemnity and agreement to hold harmless shall include the payment of costs and attorneys' fees on behalf of the beneficiaries of such indemnity.

Paragraph 5. Should the Employer fail to remit dues to the Union as required under this Agreement, the Employer shall be liable for and pay all costs of collection, including audit expenses and attorney fees and costs. The Union may file suit, or strike the non-remitting Employer, or both for non-remittance or underpayment of dues. Employers that are delinquent in the remittance of dues shall be assessed an additional ten percent (10%) liquidated damages on the unpaid amount. The Union may audit the Employer to monitor its compliance with this Article.

Paragraph 6. The Employer will deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to

10

the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue standard.

## Article VII
## UNION JURISDICTION

Any Employer who subcontracts any work covered by this Agreement will notify the Union of the subcontractor before such work is begun. Employer agrees that he will not sublet any work to any Employee.

(a) Any Employer who sublets any of the work coming within the jurisdiction of the Laborers shall directly assume the obligations of any subcontractor to the extent of the Laborer employed on work under contract with the Employer for the prompt payment of Employees' wages, Welfare, Pension, IAP/Safety, Training and dues contributions, including reasonable attorneys' fees incurred in enforcing the provisions hereof. The Union will, upon written request, furnish written certification to any Employer as to whether a subcontractor's wages and payment of Welfare, Pension, Training, IAP/Safety and dues contributions are current.

(b) Employers shall not contract any work covered by this Agreement to be done at the site of the construction, alteration, or repair of a building, structure, or other work to any person, firm, or company who does not have an existing labor agreement with the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY covering such work. The Union will, upon written request, furnish written certification to an Employer as to whether a subcontractor has an existing labor agreement with the Union.

(c) If an Employer, bound to this Agreement, contracts or subcontracts any work covered by this Agreement to be done at the jobsite of the construction, alteration, painting or repair of a building, structure or other work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such

11

subcontractor to be bound by all the provisions of this Agreement, or in addition to any other remedies provided under this Article, the Employer shall maintain daily records of the subcontractor's or the subcontractor's Employees jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund as provided in Article VIII of this Agreement,

(d) The terms and conditions of this Agreement shall apply to all Bargaining Unit work performed by the Employer performing such work indirectly if such work is performed by any business entity controlled by the Employer, or if the Employer is a corporation, controlled by the person who controls the Employer.

(e) The Employer shall notify the Union of all non-signatory subcontractors prior to such subcontractors commencing work. Upon request of the Union, any sub-contractor that fails to become signatory to the Union labor contract within 24 hours of the Union's request shall be removed from the job site.

(f) The Employer shall not be liable for the wages and fringe benefits owed by the subcontractor. However, should the Employer either fail to timely notify the Union of a non-signatory subcontractor, or fail to remove the non-signatory subcontractor within 24 hours upon the Union's request, the Employer shall pay to the Union, and its employees on the jobsite, an amount to equal to the difference between the subcontractor's aggregate wages and benefits and the amount set forth in this Agreement for the entire period that the subcontractor works with a Union agreement on the job site.

## Article VIII
## WAGES

Paragraph 1. The rates of wages exclusive of fringe benefits to be paid in this trade for the period June 1,

12

2013 to and including May 31, 2017, shall be as set forth below for the respective following classifications as further defined herein.

The wage rates include an increase of $1.90 per hour effective June 1, 2013 to May 31, 2014( to be allocated between wages and fringe benefits by the Union in its sole discretion)for a wage rate of $37.00 per hour which includes the dues deduction. June 1, 2014 to May 31, 2015, $2.00 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2015 to May 31, 2016, $2.05 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. June 1, 2016 to May 31, 2017, $2.10 per hour increase to be allocated between wages and fringe benefits by the Union in its sole discretion. The foregoing allocations may include allocations to LIICET and LDC/LMCC.

CLASSIFICATION

Employees shall receive the following hourly premiums in the classifications set forth below:

| | |
|---|---|
| Building Laborers | $0.00 |
| Fire Brick Work and Boiler Setter Laborers | $.325 |
| Jackhammerman (On Firebrick Work Only) | $.675 |
| Boiler Setter Plastic Laborers | $ .45 |
| Chimney Laborers (Over 40 Feet) | $ .10 |
| Chimney on Firebrick | $ .35 |
| Scaffold Laborers | $ .10 |
| Caisson Diggers | $ .35 |
| Jackhammerman | $.225 |
| Power Driven Concrete Saws, Other Power Equipment | $.225 |
| Stone Derrickman and Handlers | $ .20 |

13

Fireproofing and Fire
  Shop Laborers ....................$ .00
Well Point System Men ..............$ .35
Pumps for Dewatering, other ·
  Unclassified Laborers ...............$0.00
Windlass and Capstan
  Person ...........................$ .15
Cement Gun Nozzle
  Laborers (Gunite) ..................$ .15
Cement Gun Laborers ................$.075
Plaster Laborers ....................$0.00
Construction Specialist ..............$0.00

Sub-Foremen shall receive $.75 premium wages over and above top Laborers' Scale under his supervision.

Building Labor Foremen shall receive $1.50 premium wages over and above top Laborers' Scale under his supervision.

General Foremen shall receive $2.00 premium wages over and above top Laborers' Scale under his supervision.

Superintendents shall receive $3.00 premium wages over and above top Laborers' Scale under his supervision.

Dosimeter Use A premium of One ($1.00) Dollar per hour shall be paid to any Laborer required to work with a dosimeter used for monitoring nuclear exposure or with any similar instrument or measuring device.

Power Pac When a Laborer uses a power-driven piece of equipment he shall be paid the rate of pay of the tool at the end of the power pac.

Asbestos Use For the period June 1, 2001 through May 31, 2002, a premium of fifteen cents ($.15) per hour shall be paid to any Laborer required to work with asbestos who is a certified asbestos Laborer licensed by the State of Illinois as an Asbestos Abatement worker. Thereafter, no premium shall be paid.

14

Paragraph 2. APPRENTICESHIP AND
TRAINING FUND

Section 1. APPRENTICE COMMITTEE: The Employer hereby agrees that the Joint Apprenticeship Training Committee (JATC) shall have the authority to establish rules for the apprentice program, including penalties for violations of the apprenticeship rules, which are incorporated herein by reference. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Laborers' Apprentice and Training Fund, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreement and Declaration of Trust.

Section 2. APPRENTICESHIP AND TRAINING FUND: The Employer shall contribute fifty cents ($.50) per hour for each hour worked from June 1, 2013 to May 31, 2014 for all Employees covered under this Agreement to the Construction and General Laborers' District Council of Chicago and Vicinity Apprenticeship and Training Fund payable to the Training Fund or a designated appointee at the end of each month and such additional sums as the Union may designate in its sole discretion from its total economic package on June 1, 2014, 2015 and 2016 under this Agreement. The terms of the trust establishing the Fund are incorporated by reference herein and all terms regarding auditing, assessment, non-payments and grace periods as set out in the Collective Bargaining Agreement regarding payment of Welfare and Pension Fund contributions shall apply as if fully set forth herein for the Construction and General Laborers' District Council of Chicago and Vicinity Apprenticeship and Training Fund.

Section 3. The term of apprenticeship shall be 4,000 hours, or two years, whichever occurs later. All Health and Welfare, Pension, Training Fund, Industry Advancement and other contributions required under this Agreement will commence immediately upon employment of an apprentice. Union affiliation will be required after seven (7) days of employment.

15

**Section 4.** The wages per hour paid to apprentices shall be as follows:

| 1st six (6) months: | 60% of journeyman (base) wages |
| 2nd six (6) months: | 70% of journeyman (base) wages |
| 3rd six (6) months: | 80% of journeyman (base) wages |
| 4th six (6) months: | 90% of journeyman (base) wages |
| After 24 months: | 100% of journeyman (base) wages |

**Section 5.** The ratio of journeymen to Apprentices shall be six (6) laborer journeymen to one (1) laborer apprentice on a company-wide basis, with no more than twenty percent (20%) of laborers being apprentices on any one job site of the Employer. Employers who employ a maximum of between one (1) and five (5) laborer journeymen shall be entitled to one (1) laborer apprentice, who may be assigned to job sites irrespective of the twenty percent (20%) job site maximum specified in this provision.

**Section 6.** Referral of apprentices will be through the Local Union with jurisdiction over the job site. All apprentices must be referred by the Local Union from approved JATC apprentices. Employers requesting apprentices will be assigned an apprentice from the available JATC apprentice pool. The JATC can limit the number of apprentices to that which is adequate for current needs and which can be properly trained by the program. Employers may recall their laid off apprentices to work, provided that the Employer complies with the ratios set forth in Paragraph 5. All apprentices must report their hours weekly to the JATC. All apprentices will be tested for the presence of illegal substances at the time they enter the apprentice program.

**Section 7.** Mandatory Apprenticeship. No agreement on the request of the Union for the establishment of mandatory apprenticeship has been consummated. Therefore, the question of establishing mandatory apprenticeship is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing upon Employer from Union, such question shall be taken up for discussion and further negotia-

16

tion by the parties hereto. The negotiation committees shall be comprised of the current trustees of the Construction and General Laborers' District Council of Chicago and Vicinity Apprenticeship and Training Fund. Neither the request nor the conduct of said negotiations shall impact the validity or enforceability of any other provision of the Labor Agreement.

Paragraph 3. WELFARE: Beginning the period from June 1, 2013 to May 31, 2014, the Employer agrees to make Health and Welfare contributions of $13.38 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages herein stipulated. This $13.38 per hour shall be paid to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity or a designated appointee at the end of each month.

That for the periods June 1, 2014 to May 31, 2015; June 1, 2015 to May 31, 2016, June 1, 2016 to May 31, 2017; that on May 1 of each year, if able, but not later than June 1, the Union in its sole discretion, shall determine the amount of additional contributions to Welfare and/or Pension and Training and other funds to be allocated from the economic package for that year. (See Article VIII, Paragraph 1)

The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, as well as any amendments thereto, and agrees to be bound by all actions taken by the Trustees of that fund pursuant to the Agreements and Declarations of Trust.

Paragraph 4. PENSION: Beginning June 1, 2013 the Employer agrees to make a pension contribution of $9.52 per hour for each hour worked by all Employees covered by this Agreement in addition to the wages and welfare payments herein stipulated. This $9.52 per hour shall be paid to the Laborers' Pension Fund or to a designated appointee at the end of each month.

. 17

That for the periods June 1, 2014 to May 31, 2015;
June 1, 2015 to May 31, 2016, June 1, 2016 to May 31,
2017; that on May 1 of each year, if able, but not later
than June 1, the Union in its sole discretion, shall deter-
mine the amount of additional contributions to Welfare
and/or Pension and Training and other funds to be allo-
cated from the economic package for that year. (See
Article VIII, Paragraph 1)

The total economic increase shall be allocated bet-
ween wages and fringe benefits and other funds by the
Union in its sole discretion, except that the Union agrees
that it shall allocate sufficient funds to the pension fund
of the Union from the total economic package increases
set forth above in each year of this agreement such that
the pension fund remains in green status as defined by the
Pension Protection Act of 2006, or any successor legisla-
tion. The Employer agrees to be bound by the Agreements
and Declarations of Trust establishing the Laborers' Pen-
sion Fund, as well as any amendments thereto, and agrees
to be bound by all actions taken by the Trustees of that
fund pursuant to the Agreements and Declarations of Trust.

The parties agree that the Employer shall make lump
sum contributions to employee fringe benefit accounts,
administered by the Trustees on behalf of each employee.
It is further agreed that such contribution shall be accom-
panied by a breakdown of payment according to appro-
priate benefits.

The Trustees of the Welfare Fund and the Trustees of
the Pension Fund shall, among other things, have author-
ity to determine the type and amount of benefits to be
provided in each of said funds, the eligibility rules govern-
ing entitlement to benefits, and whether and to what
extent benefits are to be provided for covered Employees.

The failure of the Employer to contribute to the said
Welfare or Pension Funds when the same is established, as
provided herein, shall for the purposes of the remedies the
Union may pursue, be deemed the same as the failure of
the Employer to pay wages, and the Union shall be per-

18

mitted to remove workers whom they represent for non-payment of such contributions, anything to the contrary in this Agreement notwithstanding.

A grace period of thirty (30) days shall be granted for Employers to submit reports and contributions as provided. Said reports and contributions not received during this grace period shall be assessed liquidated damages amounting to ten (10%) percent of the amount of the contributions which are owed. The Employer acknowledges that the liquidated damages shall be used to defer administrative costs arising by said delinquency and acknowledges the costs to be actual and substantial, though difficult to ascertain. However, the Employer acknowledges these costs to be at a minimum of ten (10%) percent, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions shall bear interest at a maximum legal rate of interest per annum from the due date until they are paid.

Further, in the event the Trustees place the account in the hands of legal counsel for collection, the delinquent Employer shall be liable for reasonable attorneys' fees, and for all reasonable costs incurred in the collection process, including court fees, audit fees, etc.

Reasonable attorneys' fees shall mean: All reasonable attorneys' fees in the amounts for which the Trustees become legally bound to pay, including recovery of liquidated damages, interests, audit costs, filing fees, and any other expenses incurred by the Trustees.

The Trustees of the aforementioned Welfare and Pension Funds and the Union shall have the authority to audit the books and records of a participating Employer, either directly or through their authorized representative, whenever such examination is deemed necessary for the purpose of compliance with the provisions of this Agreement.

Each participating Employer shall make its books and records available to the Trustees for such purpose. In the event the audit discloses that the Employer, during the period of the audit, has underpaid its contributions and/or

19

wages, the Employer shall be liable for the costs of the examination, including but not limited to, audit fees and reasonable attorneys' fees. The Trustees' authority to waive any costs shall be governed by the terms of the Trust Agreement.

Paragraph 5. Section 415 Excess Benefit Fund. A Section 415 Excess Benefit Fund shall be established for the purpose of providing alternative benefit to any employees of the Employer who become unable to receive the entire amount of the accrued pension benefits to which they would be entitled under one or more of the pension plans sponsored by their Employer because of limitations established by Section 415 of the Internal Revenue Code. The Employer may be required and directed by the Board of Trustees of the Excess Benefit Fund to contribute a portion of its agreed-upon "pension" contribution to the Section 415 Excess Benefit Fund and shall not increase the Employer's cost beyond the amount that the Employer is obligated to contribute to the Laborers' Pension Fund and that the funding of the Section 415 Excess Benefit Fund shall be fully tax deductible to the Employer for Federal Income Tax purposes. The Employer hereby agrees that the Board of Trustees of any such Section 415 Excess Benefit Fund shall be authorized to determine each year the amount that will be contributed by the Employer and the amount to be credited to the account of any eligible retiree for payment in lieu of accrued benefits that would exceed the limits set by Section 415 of the Internal Revenue Code.

Paragraph 6. SUPERVISORS: To the extent permissible by the Internal Revenue Service or any Federal Act, and for the purposes of Paragraphs 3 and 4 of Article VIII of this Agreement only, the bargaining unit shall also include those persons in the employ of an Employer who are supervisors, as defined in the Labor Management Relations Act, as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust funds described in the aforesaid Paragraph 3 and 4 of Article VIII hereof.

20

Paragraph 7. Appointment of Trustees to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund. The parties agree that the Employer-appointed trustees of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund and training and apprentice funds to which Employers are required to contribute shall be appointed solely by Employer associations that enter into collective bargaining agreements with the Union requiring contributions to such funds ("Signatory Associations"). It is further agreed that the Trust Agreements establishing such funds shall be amended to replace any Employer association that appoints a trustee and does not have a labor agreement with the Union, replacing it with a Signatory Association. The union and Signatory Associations shall meet within 30 days of the effective dates of agreements covering a majority of Fund participants to review the appointment of Employer Trustees of the funds. It is agreed that the numbers of hours contributed by Employers represented by Signatory Associations compared to contributions by other Signatory Associations during the preceding year shall be the basis for assigning the number of trustee appointments. If such parties are unable to agree on the Signatory Associations to be responsible for appointments and the number of appointments to be made by each Signatory Association the dispute shall be submitted to expedited arbitration under Subpart D of the Policies and Procedures of the Federal Mediation and Conciliation Service.

Paragraph 8. Article III Section 2 of the trust agreements of the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity and the Laborers' Pension Fund shall be amended to include the following: "Association-appointed Trustees must be full-time employees of Contributing Employers within the Association's membership. A Contributing Employer shall be defined as an Employer that has employed an average of five (5) or more Laborers per-

21

forming bargaining unit work for whom contributions have been made per month in each of the previous three (3) calendar years."

Paragraph 9. The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Vacation Fund, a jointly-trusteed vacation plan established for the purpose of providing income to members during their winter layoffs. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 10. The Employer agrees to bound by the Agreements and Declarations of Trust, as well as any amendments thereto, establishing the Chicagoland Laborers' Annuity Fund, a jointly-trusteed defined contribution plan providing a supplemental retirement benefit. Contributions to the Fund will be allocated in the Union's sole discretion from the total economic increase.

Paragraph 11. Special Rules for Bonding. An employer that is owned or managed, in whole or part, by an individual who currently has or previously had in the last ten (10) years ownership or principal managerial responsibility for another contributing employer that currently is or ceased doing business when delinquent to the Funds shall be required to post for the benefit of the Funds an additional cash bond or obtain a surety bond from a Fund-approved insurer in an amount equal to twice the amount of the other contributing employer's delinquency. This amount may be adjusted by the Benefit Fund Trustees for each individual employer. This bond shall be in addition to and separate from the bond required elsewhere in this Agreement.

Paragraph 12. OUT OF TOWN WORK. When Laborers who reside or work in the nine-county geographic area covered by this Agreement are voluntarily requested to work at locations outside these nine counties, the Employer shall continue to report and pay benefits for all hours worked outside the nine counties. If the work performed is covered under a labor agreement with

22

the Laborers' International Union of North America or its affiliates, the Employer shall report and pay the benefit contributions to the fringe benefit fund identified, and the contribution rates specified, under that labor agreement. If the work performed is not covered under a labor agreement with the Laborers' International Union of North America or its affiliates, then the Employer shall report and pay the benefit contributions to the fringe benefit funds identified, and the contributions rates specified, under this Agreement. No employee shall be obligated to accept out of town employment or be subject to retaliation for refusing such work.

Paragraph 13. Withdrawal of Employees. If the Employees are withdrawn from any job in order to collect contributions to the Laborers' Health and Welfare, Pension and/or Apprenticeship and Training Funds, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees form the job is given to the Employer by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and not from any other entity. The foregoing shall not apply if the Employer has made payment on behalf of the affected employees to another fringe benefit fund under a labor agreement of a union affiliated with the Building and Construction Trades Department, AFL-CIO.

## Article IX
## BONDING

All Employers shall procure, carry and maintain a surety bond in form and amount satisfactory to the Union, but not less than in the principal sum of $5,000.00, to guarantee payment of wages, Pension and Welfare Trust contributions, during the term of this Agreement.

The Employer shall give notice to the Union and the appropriate Fund Office in writing not later than ten (10) days after the occurrence of any of the following events relating to the Employer, occurring after the date hereof:

23

(a) Formation of Partnerships;

(b) Termination of business;

(c) Change of name commonly used in business operation;

(d) Change in form of business organization;

(e) Incorporation of business;

(f) Dissolution of corporation;

(g) Name and business organization of successor;

(h) Admission to or withdrawal from any association operating as a multi-Employer bargaining unit.

If the Employees are withdrawn from any job in order to ensure compliance with the provisions of this Article, the Employees who are affected by such stoppage of work shall be paid for lost time up to sixteen (16) hours, provided that two (2) days' written notice of intention to remove employees form the job is given to the Employer by the Union. These lost time amounts may be collected only from the contractor with whom the Union has a dispute and not from any other entity. The foregoing shall not apply if the Employer produces the required bond before expiration of the 2-day notice period.

## Article X
## INDUSTRY FUND

Paragraph 1. Each Employer shall pay the amount of seven cents ($.07) for each hour worked by those employees covered under this Agreement to the CCA Industry Advancement Fund ("Industry Fund") and shall also pay the amount of eight cents ($.08) for each hour worked by those employees covered under this Agreement to the Chicago-area Laborers-Employees Cooperation Education Trust ("LECET") and shall also pay the amount of twelve cents ($.12) for each hour worked by those employees to the Laborers' District Council Labor-Management Cooperation Committee ("LDC/LMCC").

Paragraph 2. The Employer agrees to be bound by the Agreements and Declarations of Trust establishing the Industry Fund, LECET, and the LDC/LMCC, and all

24

amendments thereto, and agrees to be bound by all actions taken by the Trustees of those funds pursuant to the Agreement and Declaration of Trust of those funds.

Paragraph 3. Should any Employer fail to make payments to the Industry Fund, LECET Fund or LDC/LMCC, the Employer shall be liable for and pay, in addition to the delinquent contributions, interest at a rate of ten percent (10%) per year for such delinquencies, and to pay all costs of collection, including audit expenses and attorney fees and costs.

## Article XI
## PARTICULAR WORK RULES AND CLARIFICATION OF CONDITIONS

Paragraph 1. (a) Building Laborers' scale shall apply to all work performed by the Laborers except as specifically classified.

(b) Boiler Setter Laborers will include all work of handling solid refractory materials and also fire brick work in boiler setting, open hearth, furnace, blast furnace, soaking pits, tanks, dust catchers, coke oven batteries, furnace chimneys and stacks, including cleanup work on the above services.

(c) Boiler Setter Plastic Laborers applies to work of actually installing plastic, in connection with the boiler work or other non-solid refractory materials. Mortar mixers, lancers, burners, etc., plus all work from point of forty (40) feet above normal ground level in fire brick work and Boiler Setters Laborers' Classifications.

Minimum safety measures for Boiler Setters are that all scaffolding, in and around blast furnaces and hot stoves, etc., shall not exceed five (5) feet per landing and be constructed of solid-type materials, except the large cable-type used in blast furnaces, and at least every fourth scaffold shall be left in place to serve as a safety scaffold with ladders extending to safe distance above each landing. The Employer shall furnish respirators, safety goggles, gloves and other protection materials necessary in

25

and about dusty and hot working conditions during all furnace work.

(d) Caisson Diggers applies to all caisson work and mon working in trenches, foundation pits and piers eight (8) feet or more in depth below the level that excavation begins in such trenches, foundation pits or piers.

Where hazardous conditions exists when excavating trenches, foundation pits or piers or where a type of soil, sand or other material being removed creates a hazardous condition for the Employee such trenches, foundation pits or piers must be shored or sheathed, and the Employees performing the work of shoring and sheathing shall be paid the caisson rate.

Where hazardous conditions do not exist, but sheathing or shoring is necessary solely for the purpose of protecting a bank or preserving the work, then caissons rates shall not apply.

When specifications show the depth of such excavation to exceed eight (8) feet, said caisson rate shall apply from the start of excavation when hand dug. For safety reasons, no worker shall be permitted to work alone if excavation exceeds five (5) feet, unless he is working under direct supervision.

(e) Chimney Laborers (over forty (40) feet) applies to all freestanding chimneys in excess of forty (40) feet above the ground level. The Chimney Laborers' rate shall apply for the entire height of the chimney, both erecting or wrecking such chimney.

Free-standing chimneys shall be construed as chimneys built from the ground up, outside the building, for industrial, commercial or institutional purposes. It is understood that this provision does not apply in the erection of ordinary chimneys for apartment buildings, etc., unless the chimneys go forty (40) feet above the roof level.

(f) Jackhammermen The rate for Jackhammermen herein established shall apply to any mechanically operated tool over thirty-five (35) pounds in weight, used in demolition, concrete breaking, tamping or other similar

26

work. The regular building Laborers' rate shall apply to all lighter mechanical tools.

(g) Scaffold Laborers: Applies to all Laborers engaged in installing, relocating and/or removing all swinging, tubular and other types of scaffolds designed and used for tending to or servicing our allied trades. The raising and lowering of swinging and specially designed scaffolds by hand, by power, or by any other process, is not included in scaffold Laborers' rates.

(h) Stone Derrickmen and Handlers: Applies to all Laborers engaged in helping the stone setters set and distribute dimensional cut stone, terra cotta, granite or prefabricated materials replacing or substituted for cut stone, etc.

(i) Windlass and Capstan Persons: Applies to all hoisting units attached to mixers or movable equipment used to raise material where regular hoists cannot be erected or used.

(j) Fireproofing and Fire Shop Laborers: applies to Fireproofing beams, ceilings and walls, etc., in connection with gunite work or any other process, including clean-up work on job site, shops or yards.

(k) Cement Gun Nozzle Laborers (Gunite) Applies to Laborers handling nozzle in application of gunite.

(l) Cement Gun Laborers: Applies to laborers handling cement gun on concrete work.

(m) Plasterer Laborers: Applies to all Laborers as agreed upon in the Agreement with the Chicagoland Association of Wall and Ceiling Contractors, and Construction and General Laborers' District Council of Chicago and Vicinity.

(n) Laborers who are engaged in the work of construction or wrecking of silos, etc., for grain elevators, and are required to strip or wreck forms as hazardous heights in this work shall be paid chimney Laborers' rates.

(o) On salamander work or hearing for frost prevention work, the building Laborers' rates of wages shall

27

apply for the first eight (8) hours' work regardless of starting time Monday through Friday of each week. All hours worked on Saturday, Sunday or Holidays, and all hours worked after eight (8) hours per day, or forty (40) hours per week Monday through Friday, as above set forth, shall be paid for at one and one-half times the Building Laborers' rate of wages.

(p) Where services are performed by Laborers as watchmen, and such Laborers shall not be engaged in the performance of any other branches of work covered by this Agreement, they shall be paid not less than $1.50 below the Building Laborers' rate.

(q) Foremen There shall be a Laborer appointed as Labor Foreman when eight (8) or more Laborers are employed on any one job or project; there shall be a sub-foreman after the first sixteen (16) Laborers, and for each multiple of eight (8) Laborers employed thereafter to properly supervise the various phases of the work. A Sub-Foreman shall receive $.75 premium wages above the regular wages paid those Laborers under his supervision, plus established overtime rates. When a Labor Foreman is needed to supervise Laborers such Labor Foreman shall receive $1.50 or more premium wages above top labor scale, as mutually agreed between said Labor Foreman and his Employer.

The above and foregoing shall not be so construed as to restrict the Employer's right to pay higher premium wages or appoint a greater percentage of foremen and/or sub-foremen.

(r) The Employer shall furnish any necessary protective medication, such as petroleum jelly, to prevent burns from creosote or chemicals which may prove injurious to the skin.

(s) On a job site requiring a Tool Shanty, said Tool Shanty shall be tended by a Laborer if Employer determines tending is required.

(t) Portable Water Pumps shall be tended by Laborers if Employer determines tending is required.

28

(u) In any instance where a machine replaces only the work of Laborers, said machine shall be operated by a Laborer if so determined by the Employer.

(v) Any building 125 feet high or more shall require the use of a Man Cage.

Paragraph 2. Wages shall be paid by payroll check, which will include a stub or statement showing the number of hours worked and all deductions from wages. Failure on the part of the Employer to have sufficient funds in the bank to meet pay checks issued workers, shall deprive such Employers henceforth from the right to pay by checks and Joint Arbitration Board shall assess such Employer a sum equal to not less than the expense incurred in the collection of the amounts due because of such insufficient funds to meet checks so issued.

Paragraph 3. The Union agrees that the Employees whom it represents will accept and demand the wages and fringe benefit payments set forth in this Agreement, and the Employer agrees to pay the wages and fringe benefit payments herein stipulated.

Claims for Shortages: Claims by Employees for shortages must be made within three (3) weeks after shortage is discovered.

Paragraph 4. Payment by the Employer and acceptance by the Employee of less than the wage herein stipulated shall be a violation of this Agreement upon the part of each. Upon conclusive proof to the Joint Arbitration Board of such violation, the Employer shall immediately pay the unpaid balance due in accordance with the wage herein stipulated; and in addition thereto, shall pay the Joint Arbitration Board an amount equal to the penalties provided in the appropriate Article of General Conditions of this Agreement, but under no circumstances shall such penalties be less than fifty (50%) percent of the amount of such pay shortage as just and liquidated damages because of such violation.

Upon conclusive proof that the Employer is guilty of paying less than the wages herein stipulated, then nothing

29

in this Agreement shall be construed to take from the Union the right to remove workers it represents from the job, and henceforth to deny such Employer further right to the employment of its members.

Members of the party of the second part who are found guilty of violation of this Agreement shall be dealt with by the party of the first part.

Paragraph 5. The Union reserves and shall have the right to remove its men from any job upon the failure of the Employer to pay the wages due any of its Employees or fringe benefits which may be due by reason of the hours of employment.

Paragraph 6. The Employer hereby agrees to maintain proper temporary toilet and drinking facilities accessible to all Employees on the job. The Employer also agrees that it will ice the water at the start of each shift. Paragraph 7. The Employer shall furnish a suitable place, properly heated when reasonably necessary, where Laborers may eat and change their clothes.

Paragraph 8. HIRING HALL: No agreement on the request of the Union for the establishment of an exclusive Hiring Hall has been consummated. Therefore, the question of establishing a Hiring Hall is hereby reserved for the future consideration of the parties. Upon service of sixty (60) days' notice in writing upon Employer from Union, such question shall be taken up for discussion and further negotiation by the parties hereto.

Paragraph 9. KEY MAN. The Employer may utilize no more than one (1) Laborer at a job site as its key man who resides outside the geographic area covered by this Agreement. This limitation shall not apply to any Laborer who works regularly and continuously within the geographic area covered by Agreement. Exceptions can be made with the parties' mutual agreement in order to obtain reciprocal arrangements with other jurisdictions.

30

## Article XII
### STEWARDS

Paragraph 1. The Business Agent of the Union in whose jurisdiction a job or project is located shall have the right to appoint one Laborer employed on the job as Steward on said job or project. Such Steward shall be subject to the same terms of employment as any other Employee, but taking into consideration that the Steward should be present during all working hours, all possible overtime work shall be assigned to all Stewards, if the Stewards do not replace another Laborer from that other Laborers' previously assigned duties.

Paragraph 2. The duties of the Steward shall include the checking of terms and conditions of work, safety conditions, starting dates of employment for new Laborers, whether Union or Non-Union, and report same to the Business Representative who appointed him. All Laborers employed on a job or project shall report to the Steward any differences or disputes which may arise in connection with the work or any part of it, and the Steward shall report same to the office of the Union. If it becomes necessary to discharge or lay off any Laborers because of completion of the work or otherwise, the Laborer appointed and acting as Steward shall not be discharged or laid off while other Laborers remain employed on the job or project as long as he is competent to perform the work. Nothing herein contained shall in any way restrict the right of any Employer to discharge a Steward for cause, upon notification to the Business Agent of the Local Union who appointed the Laborer to act as Steward.

Paragraph 3. Whenever one or more Laborers are required to work overtime, one of these Laborers shall be the regular designated Steward if he is competent to do the work required or if he cannot work, he will call the Business Manager and the Business Manager will designate someone on this job to act as Steward.

Paragraph 4. Where an Employer has been found to have engaged in:(a) a serious violation of the wage provi-

31

sions of this Agreement as determined by the Joint Adjustment Board or by an arbitrator;

(b) a violation of the fringe benefit provisions of this Agreement, by a court order or by a delinquency settlement agreement; or

(c) a violation of the rules of the apprenticeship program as determined by the JATC;

then for the next six (6) months of active laborer employment, the Union shall have the right to appoint and place a steward of its own choosing on a then-current job of that Employer.

## Article XIII
### REPORTING FOR WORK

Paragraph 1. Any Laborer reporting for work upon order expressed or implied by the Employer or his Agent and not put to work for any reason, except weather conditions, fire, accident or other unavoidable cause, shall receive four (4) hours' pay for lost time. Weather conditions shall be an exception to the requirement for "show up" or reporting pay provided the Employer has notified the Employee by telephone or has required in writing that the Employee call before he departs from home. The Employer must provide a definite and available phone number and must post this provision on each job site. When Laborers are directed to wait during inclement weather by the Employer, his Superintendent or Labor Foreman, they shall be paid for such waiting time.

When placing monolithic concrete, an Employee's eating period can be adjusted, but not beyond one-half (½) hour before or after the regular scheduled time. Double time shall be paid if no eating period is permitted between shifts.

Any person other than a regular Employee who is called for temporary work for just a portion of one day, and who works more than four (4) hours in any one day, shall receive equivalent of not less than eight (8) hours' pay for said day, unless such Employee is prevented from

32

completing a day's work because of inclement weather, in which case the Employee shall be paid for the time actually worked.

Paragraph 2. In case of an accident requiring medical attention during working hours, Laborers shall be permitted to go for or be taken for medical attention at once, and shall be paid for lost time that day.

In the event such injured Laborer is permitted to continue working by the doctor, but is required to return for periodic medical attention during working hours by the insurance physician or company doctor, such injured Laborer shall be paid for lost time, but not to exceed two (2) hours' pay for such visit to the doctor.

Paragraph 3. DISCIPLINE FOR QUITTING: Any Employee who leaves his employment without giving the employer or his agent notice during the previous shift, shall be subject to discipline by the Arbitration Board.

The Employer agrees that no punitive action shall be taken against their Employees, if said Employees refuse to cross a picket line that may be placed on the job or project of their Employer.

## Article XIV
### PAYDAY

Paragraph 1. It is agreed that Employees shall be paid before quitting time on Wednesday of each week, except when the regular payday is a Legal Holiday, in which case they shall be paid the day before such holiday at quitting time and except when Monday or Tuesday is a legal holiday, in which event the Employees may be paid on Thursday.

Paragraph 2. Wages are to be paid in full up to seventy-five (75) hours preceding payday. An Employee quitting of his own accord shall be paid on the next regular payday. An Employee discharged or laid off shall be paid in cash or check on the job at the time he is laid off or be given a time check calling for four (4) additional hours to cover traveling time. Such additional hours are to be

33

added at the time of giving check and shall be paid on presentation at the office of the Employer. If same is not promptly paid upon arrival at the office, and he is required to remain there during working hours, he shall be paid for such time –Sundays and Holidays excepted.

### Article XV
### BRANCHES OF WORK

Paragraph 1. The classifications of Employees covered by this Agreement doing the work falling within jurisdiction of this Union shall be used in performing all common labor at the building or site, in connection with masonry and carpentry or such other work as may be directed by the Employer, his foreman or agent.

Paragraph 2. The Employer shall not engage his labor on a piece-work basis.

Paragraph 3. The Employer shall furnish all tools and shovels required for the work, also boots and rain equipment required for the protection of the workers in the trade and the worker shall be held responsible for same.

Paragraph 4. RECOGNITION OF BARGAINING REPRESENTATIVE: The Employer, in response to the Union's claim that it represents an uncoerced majority of the bargaining unit employees, and its demonstrated evidence of majority support, acknowledges and agrees that the Union has been authorized to and in fact does represent the majority of such employees in accordance with Section 9 of the National Labor Relations Act without the need for a Board certified election, and therefore the Employer recognizes the Union as the sole and exclusive bargaining agent for all employees in the bargaining unit falling under the classifications set forth in this Agreement in accordance with Section 9 of the Act.

Employer hereby agrees to recognize the Union as the exclusive representative of all its Employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment, and also confirms the juris-

34

diction of this Union over the branches of work covered herein, and agrees not to enter into any agreement with other labor organizations covering such branches of work.

Paragraph 4(a). BRANCHES OF WORK COVERED HEREIN: The building of all scaffolding, runways and windbreaks for concrete and mason work, rigging for caissons and concrete chutes and hoppers, digging, lagging, sheeting and dewatering of foundation piers and caissons; concrete work within the walls of any building or jobs; the rubbing and grinding of concrete installations where no patching is involved; boxing for concrete footing, raising, moving, shoring of all buildings, back fillings and gradings; also all laboring work in connection with cement sidewalks, curbs or gutters, stone curbs, streets, alleys, driveways, viaducts, retaining walls, slate, tile and asbestos roofing; also all laboring work connected with composition floor work, rock asphalt, whether done by hand or by any other process, wrecking and stripping of concrete forms and false work, tending to carpenters, tending to salamanders; removal, clearing and cleaning of all debris, signalman and handling of such materials for construction as directed by the Employer; also building in centering for fire proofing; gunite work in handling of cement gun nozzle, when gunite is applied of a thickness of one and one-half (1½) inches or more, all laboring work in connection with original installation of landscaping in connection with new construction of all types, also all laboring work in connection with boiler setting, including the installation of plastic or other non-solid refractory materials. The coverage of this agreement, in referring to the type of work hereunder, includes in addition to all other types of construction, the construction and alteration of all track work and the construction, alteration and maintenance over crack work on property on which a railroad company does not have a property rights in short, all unskilled labor connected with work undertaken by members of the Employer and the handling of all materials, or appliances in any trade where it will be more economical to have the work done by

Laborers as may be decided by the Employer, subject to appeal to the decision of the Joint Arbitration Board.

Tenders: Tending masons, plasterers, carpenters and other building and construction crafts.

Tending shall consist of preparation of materials and handling and conveying of materials to be used by mechanics or other crafts, whether such preparation is by hand or any other process. After the material has been prepared, tending shall include the supplying and conveying of said material, and all other materials to such mechanic, whether by silo mixer, bucket, hod, wheelbarrow, buggy, or any motorized unit used for such purpose, bobcats, and unloaders for cement masons and concrete contractors, forklifts for brick masons and/or any other machine which replaces the wheelbarrow or buggy.

Unloading, handling, and distributing of all materials, fixtures, furnishings, furniture, and appliances whether crated or uncrated from point of delivery to stockpiles and from stockpiles to approximate point of installation.

Drying of plaster, concrete, mortar or other aggregate when done by salamander heat or any other drying process.

Cleaning and clearing of all debris, including wire brushing of windows, scraping of floors, removal of surplus material from all fixtures within confines of structures and cleaning of all debris in building and construction area. The general cleanup, including sweeping, cleaning, washdown and wiping of construction facility, equipment and furnishing and removal and loading or burning of all debris including crates, boxes, packagings, and packaging waste materials. Washing or cleaning of walls, partitions, ceilings, windows, bathrooms, kitchens, laboratory, and all fixtures and facilities therein. Cleanup, mopping, washing, waxing and polishing or dusting of all floors or areas.

The aging and curing of concrete, mortar and other materials applied to walls, floors, ceilings and foundations of buildings and structures, highways, airports,

36

overpasses, tunnels, bridges, approaches, viaducts, ramps, or other similar surfaces by any mode or method.

Scaffolds: Erection, planking, maintenance and removal of all scaffolds and windbreaks for lathers, plasterers, bricklayers, masons and other construction trade crafts. Building planking or installation and removal of all staging, swinging, tubular and hanging scaffolds, including maintenance thereof.

Excavations and Foundation-Site Preparation and Clearance For Transportation and Transmission Lines: Excavation for building and all other construction; digging of trenches, piers, foundations and holes; digging, lagging, sheeting, cribbing, bracing and propping of foundations, holes, caissons, cofferdams, dams, dikes and irrigation trenches, canals and all handling, filling and placing of sand bags connected therewith. All drilling, blasting and scaling on the site or along the right of way, as well as access roads, reservoirs, including areas adjacent or pertinent to construction site; installation of temporary lines.

Preparation and compacting of roadbeds for railroad track laying, highway construction and the preparation of trenches, footings, etc., for cross-country transmission by pipelines or electric transmission or underground lines or cables.

On-site preparation and right-of-way clearance for construction of any structures or the installation of traffic and transportation facilities such as highways, pipelines, electrical transmission lines, dam sites and reservoir areas, access roads, etc. Clearing and slashing of brush or trees by hand or with mechanical cutting methods. Blasting for all purposes such as stumps, rocks, general demolition. Falling, bucking, yarding, loading or burning of all trees or timber on construction areas. Choker setters; off-bearers, lumber handlers and all Laborers connected with on-site portable sawmill operations connected with clearing. Erection, dismantling and/or reinstallation of all fences. Cleanup of right-of-way, including tying on, signaling, stacking of brush, trees or other debris, and burning

37

where required. All soil tests, operations of semi and unskilled labor, such as filing of sand bags, handling timber and loading and unloading of same.

Concrete, Bituminous Concrete and Aggregates: (a) Concrete, bituminous, concrete or aggregate for walls, footings, foundations, floors or for any other construction. Mixing, handling, conveying, pouring, vibrating, guniting and otherwise placing concrete or aggregate, whether done by hand or any other process. Wrecking, stripping, dismantling and handling concrete forms and false work. Building of centers for fire proofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, diesel or electric power. When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping and unhooking the bucket. Placing of concrete or aggregates, whether poured, pumped, gunited, or placed by any other process. The assembly, uncoupling of all connections and/or parts of, to equipment used in mixing or conveying concrete, aggregate, or mortar, and the cleaning of such equipment, parts and/or connections. All vibrating, grinding, spreading, flowing, puddling, leveling and strike-off of concrete or aggregates by floating, rodding or screening by hand or mechanical means prior to finishing. Where prestressed or pre-cast concrete slabs, walls, or sections are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections. All mixing handling conveying, placing and spreading of grout for any purpose. Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

(b) The filling and patching of voids, crevices, etc., to correct defects in concrete caused by leakage, bulging, sagging, etc.

(c) The loading, unloading, carrying, distributing, placement and handling of all rods, mesh and material for use in reinforcing concrete construction. The hoisting of rods, mesh and other material for use in reinforcing con-

38

crete construction. The hoisting of rods, mesh and other materials except when a derrick or outrigger by other than hand power is used.

(d) All work on interior concrete columns, foundations or engine and machinery beds.

(e) The stripping of forms, other than panel forms which are to be re-used in their original form, and the stripping of forms on all flat arch work.

The moving, cleaning, oiling and carrying of all forms to the next point of erection.

The snapping of wall ties and removal of tie rods. Handling, placing and operation of the hoses and pots or hoppers on sand blasting or other abrasive cleaning. The jacking of slip forms, and all semi and unskilled work connected therewith.

Streets, Ways and Bridges: Work, in the excavation, preparation, concreting, asphalt, bituminous concrete and mastic paving, ramming, curbing, flagging and surfacing of streets, striping, street markings and other pavement markings, Laborers engaged in layout work, cleanup and helping painters involved in any pavement markings, ways, courts, underpasses, overpasses, bridges, approaches and slope walls and the grading and landscaping thereof and all other labor connected therewith. Cleaning, grading, fence or guard rail installation and/or removal for streets, highways, roadways, aprons, runways, sidewalks, parking areas, airports, approaches and other similar installations. Preparation, construction and maintenance of roadbeds and sub-grade for all paving, including excavation, dumping and spreading of sub-grade material, ramming, or otherwise compacting. Setting, leveling and securing or bracing of metal or other road forms and expansion joints, including placing of reinforcing mats, or wire mesh, for the above work. Loading, unloading, placing, handling and spreading of concrete aggregate or paving material, including leveling of the surface. Strike-off of concrete, when used as paving material by hand and floating or mechanical screening for

39

strike-off. Cutting of concrete for expansion joints and other purposes. Setting of curb forms and the mixing, pouring, cutting, flowing, and strike-off of concrete used therefor. The setting, leveling and grouting of all pre-cast concrete or stone curb sections. Installation of all joints, removal of forms and cleaning, stacking, loading, oiling and handling. Grading and landscaping in connection with paving work. All work in connection with loading, unloading, handling, signaling, slinging and setting of all paving blocks, riprap or retaining walls such as stone, wood, metal, concrete or other material and the preparation of surfaces to receive same.

Trenches, Manholes, Handling and Distribution of Pipe, Etc.: Cutting of streets and ways for laying of pipe, cables or conduits for all purposes; digging of trenches, manholes, etc., handling and conveying all materials; concreting, back-filling, grading and resurfacing and all other labor connected therewith. Clearing and site preparation as described herein. Cutting or jackhammering of streets, roads, sidewalks or aprons by hand or the use of air or other tools. Digging of trenches, ditches and manholes and the leveling, grading and other preparation prior to laying pipe or conduit for any purpose. Loading, unloading, sorting, stockpiling, wrapping, coating, treating, handling and distribution of water mains, gas mains, and all pipe, including placing, setting and removal of skids. Cribbing, driving or sheet piling, lagging and shoring of all ditches, trenches and manholes. Handling, mixing or pouring concrete and handling and placing of other materials for saddles, beds or foundations for the protection of pipes, wires, conduits, etc. Backfilling and compacting of all ditches, resurfacing of roads, streets, etc. and/or restoration of lawns and landscaping.

Shafts and Tunnels, Subways and Sewers: Construction of sewers, shafts, tunnels, subways, caissons, cofferdams, dikes, dams, levies, aqueducts, culverts, flood control projects and airports. All underground work involved in mines, underground chambers for storage or other purposes, tunnels or shafts for any purpose, whether in free

40

or compressed air. Drilling and blasting, mucking and removal of material from the tunnels or shafts. The cutting, drilling and installation of material used for timbering, or retimbering, lagging, bracing, propping or shoring the tunnel or shaft. Assembly and installation of multiplate, liner plate, rings, mesh, mats or forms for any tunnel or shaft including the setting or rods for same. Pouring, pumps-creting or guniting of concrete in any tunnel or shaft operation, manual or hydraulic jacking of shields and the use of such other mechanical equipment as may be necessary.

Excavation or digging and grading of footings and foundations for bridges, overpasses, underpasses, aqueducts, etc., and their approaches. All concrete work as described above and in addition, the hooking on, signaling and dumping of concrete for treme work over water on caissons, pilings, abutments, etc. Excavation, grading, grade preparation and landscaping of approaches. Installation of pipe, gratings and grill work for drains or other purposes. Installation of well points or any other dewatering system.

Compressed Air: In compressed air all work underground or in compressed chambers, including tending of the outer air lock. All work in compressed air construction including, but not limited to, groutmen, trackmen, blasters, shield drivers, miners, brakemen, miner's helpers, lock tenders, mucking machine operators, mortar men, gauge tenders, rodmen, compressed air electricians, setting of line plate and ring sets, drill runners, powermen or blasters, air hoist operators; form men; concrete blower operators, cement (invert) operators, power knife operators, erector operators, keyboard operators, pebble placer operators, car pushers, grout machine operators, steel setters, cage tenders, skinner track layers, dumpmen, diamond drillers, timbermen and re-timbermen, cherry pickmen, nippers, chucktenders and cable tenders, vibratormen, jetgunmen, gunite, nozzlemen, gunmen, reboundmen and all other work connected therewith.

41

**Sewer, Drains, Culverts and Multiplate:** Unloading, sorting, stockpiling, wrapping, coating, treating, handling, distribution and lowering or raising of all pipe or multiplate. All digging, driving of sheet piling, lagging, bracing, shoring and cribbing, breaking of concrete, backfilling, tamping, resurfacing and paving of all ditches in preparation for the laying of all pipe. Pipe laying, leveling, and making of the joint of any pipe used for main or side sewers and storm sewers. All of the laying of clay, terra cotta, iron-stone, vitrified concrete or other pipe and the making of joints for main or side sewers and storm sewers and all pipe for drainage. Unloading, handling, distribution, assembly in place, bolting and lining up a sectional metal or other pipe including corrugated pipe. Laying of lateral sewer pipe from main sewer or side sewer to building or structure, except that Employer may direct that this work be done under proper supervision. (Referee Hutcheson's decision). Laying, leveling and making of the joint of all multi-cell conduit or multi-purpose pipe. Cutting of holes in walls, fittings, piers or other obstructions for the passage of pipe or conduit for any purpose and the pouring of concrete to secure said holes. Digging under streets, roadways, aprons or other paved surfaces for the passage of pipe, by hand, earth auger or any other method and hydraulic jacking of pipe under said surfaces. Installation of septic tanks, cesspools and drain fields.

**Underpinning, Lagging, Bracing, Propping and Shoring.** Underpinning, lagging, bracing, propping and shoring, raising and moving of all structures; raising of structure by manual or hydraulic jacks or other methods. All work on house moving, shoring and underpinning of structures, loading, signaling, right-of-way clearing along the route of movement. Resetting of structure in new location to include all site clearing, excavation for foundation and concrete work. Cleanup and backfilling, landscaping old and new site.

**Drilling and Blasting.** All work of drilling jackhammering and blasting. Operation of all rock and concrete drills, including handling, carrying laying out of hoses,

42

steel handling, installation of all temporary lines and handling and laying of all blasting mats. All work in connection with blasting, handling and storage of explosives carrying to point of blasting, loading holes, setting fuses, making primers and exploding charges. All securing of surfaces with wire mesh and any other material and setting of necessary bolts and rods and anchor same. All high scaling and other rock breaking and removal after blast. Handling and laying of nets and other safety devices and signaling, flagging, road guarding.

Signalmen: Signalmen on all construction work defined herein, including traffic control signalmen at construction site.

General Excavation and Grading: The clearing, excavating, filling, backfilling, grading and landscaping of all sites for all purposes and all labor connected therewith, including chainmen, rodmen, grade markers, etc.

Factories: All work in factories, mills, and industrial plants performed now or as may be acquired hereafter, including packers, cutters, loaders, raw material unloaders, checkers, stuffers, production line personnel and stenciling of materials. Handling of raw pigment; vessel cleaners and/or dryers; washing or cleaning laboratory glassware; stocking of materials in laboratories; the cleaning and/or scrubbing, washing, polishing of all floors, glasses, windows, walls rest rooms and furniture.

General: Material yards, junk yards, asphalt plants, concrete products plants, cemeteries, landscape nurseries and the cleaning or reconditioning of streets, ways, sewers and water lines and all maintenance work and work of an unskilled and semi-skilled nature, including Laborers in shipyards, tank cleaners, ship scalers, shipwright helpers, watchmen, flagmen, guards, security and safety men, toolroom men, park, sports area and all recreational center employees, utilities employees, horticultural and agricultural workers, garbage and debris handlers and cleaners.

Pits, Yards, Quarries, Etc.: All drillers, blasters and/or powdermen, nippers, signalmen, Laborers in quar-

43

rles, crushed stone yards and gravel and sand pits and other similar plants, including temporary and portable batching plants.

Wrecking: The wrecking or dismantling of buildings and all structures, breaking away roof materials, beams of all kinds, with use of cutting or other wrecking tools as necessary. Burning or otherwise cutting all steel structural beams. Breaking away, cleaning and removal of all masonry and wood or metal fixtures for salvage or scrap. All hooking on and signaling when materials for salvage or scrap are removed by crane or derrick. All loading and unloading of materials carried away from the site of wrecking. All work in salvage or junk yards in connection with cutting, cleaning, storing, stockpiling or handling of materials. All clean-up removal of debris, burning, back-filling and landscaping of the site of wrecked structures.

Railroad Track Work. Right-of-way clearance as described above, excavation, grading, subgrading, ballasting and compacting of right-of-way. Loading, unloading, stockpiling, handling and distribution of track and ties and placing of or jacking track and ties at point of installation. All burning or otherwise cutting of track. Setting of tie plates, bolting, leveling, and gauging of rails and all spiking, whether by hand or mechanical means. Placing and tamping of ballast by hand or mechanical means. Construction and/or relocation of main line, shoe flies, sidings, gradings, crossings, relocating of pipes and drainage and culverts and connected with same and removal and replacing of all fences.

Studio Utility Employees: All such work as herein described as may be pertinent to and part of the operation of Motion Picture and other related type of studios.

Use of Tools: Operation of all hand, pneumatic, electrical, motor, combustion or air-driven tools or equipment necessary for the performance of work described herein. In short, all unskilled labor connected with work undertaken by members of the party of the first part, and the handling of all materials or appliances in any trade where

44

it will be more economical to have the work performed by Laborers as may be decided by the Employer, subject to appeal to and decision of the Joint Arbitration Board.

Miscellaneous: All such work and jurisdiction as may have been acquired by reason of amalgamation or merger with former national or international Unions and as may be hereafter acquired, including all such work and jurisdiction as declared by actions of the Executive Council or conventions of the American Federation of Labor.

Paragraph 5. WORK NOT INCLUDED: The laboring work not included in this Agreement is general excavating for buildings to the bottom of floor level. If there are any sub-basements or cellars, this general excavation shall be considered to extend to the bottom of the floor, of same. Excavation in basement and sub-basements other than by power equipment shall be done by Laborers at Building Laborers' rate (except where caisson rates apply).

Paragraph 6. WRECKING: Where a building is only partially wrecked and parts torn down for the purpose of building additions, alterations, remodeling, or repairing same, such work is covered by this Agreement, and rates as established herein shall apply.

Paragraph 6(a). WRECKING: COMPLETE DEMOLITION: Work pertaining to wrecking of buildings and structures in their entirety and removed to the basement floor level is covered by the Agreement between the Laborers' District Council and the Labor Committee representing the Wrecking Industry of Chicago and Vicinity, and the rates established by said Agreement shall apply.

Paragraph 7. WALL FORMS: Laborers shall erect all wall forms (Symon, Simplex, Plywood, Aluminum, Styrofoam, Peri Systems, etc.). Laborers shall remove, dismantle and clean all forms. Laborers shall erect and dismantle all gang forms.

Paragraph 8. FLYING FORMS: Laborers shall prefabricate, place, remove, clean and oil, dismantle and stockpile flying forms.

45

### Article XVI
### ALCOHOL AND SUBSTANCE ABUSE

The parties incorporate the CISCO Uniform Drug/Alcohol Abuse Program, as modified, attached hereto as Addendum.

It is recognized that some client owners require additional substance abuse procedures to be followed on their projects for all trades, and it shall not be a violation of this agreement for signatory employers to comply with such procedures, provided prior written notification is given to the District Council.

### Article XVII
### ADJUSTMENT OF DISPUTES

Paragraph 1. Any dispute concerning the interpretation or application of this Agreement between an Employer and the Union shall be adjusted by the particular Employer and Union, in the first instance.

Paragraph 2. In the event that the matter is not settled, the Union may file a written grievance, which shall be submitted to a JOINT ADJUSTMENT BOARD (hereinafter the "JAB") comprised of three (3) employer representatives selected by the Concrete Contractors' Association of greater Chicago and three (3) Union representatives selected by the Construction and General Laborers' District Council of Chicago and Vicinity, which shall convene monthly. The determination of the JAB shall be governed by majority vote, provided that the Employer representatives and Union representatives shall have equal voting power. If decided by majority vote, the grievance determination and any relief determined to be appropriate shall be final and binding upon all parties. Laborers who prevail in their grievances before the JAB shall be compensated by the Employer for time lost in order to attend the grievance hearing.

Paragraph 3. In the event that the JAB is deadlocked upon the disposition of a grievance, then either party may refer the matter to a neutral arbitrator by so notifying the

46

other. The moving party shall obtain a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service, the American Arbitration Association, or other agreed source, provided that all arbitrators maintain their principle office in the Chicago area. The party selected by lot shall strike the first name from the list, then parties shall alternately strike names from the list until one arbitrator remains.

Paragraph 4. The decision of the arbitrator shall be final and binding upon all parties. The arbitrator shall not be empowered to amend, alter or add to this Agreement. The arbitrator's expenses shall be jointly paid by the Employer and the Local Union between whom the grievance exists.

Paragraph 5. If the Employer fails to fully comply with an award of the JAB or arbitrator within seven (7) days' notice of the award, the Employer shall pay an additional ten percent (10%) liquidated damages on any monetary award, and the Employer shall further pay all costs and attorney fees incurred by the Union to enforce the award. Notwithstanding the foregoing, the Union may further strike the non-complying Employer to compel the Employer's compliance with the award.

Paragraph 6. The Union reserves its right, and it shall not be a violation of this Agreement, for the Union to strike, picket and/or withdraw its employees from any Employer who fails to pay wages and fringe benefits as required under this Agreement.

Paragraph 7. Wage Audits. Where the grievance concerns wages that are reflected in a wage audit showing a pattern or practice of wage underpayment, the grievance must be filed within forty-five (45) days after the Union's receipt of the audit. The recovery of any wages shall be limited to the two-year period preceding the grievance filing date (or 3 years if so determined for cause by the JAB). In cases where an employee was knowingly complicit in the underpayment of wages, that employee shall be limited to receiving unpaid wages from the last 45 days and the additional amounts assessed against the employer

47

shall first be paid to defray the audit costs and thereafter as directed by the JAB.

### Article XVIII
### UNION PROTECTION

Notwithstanding anything in this Agreement to the contrary, the Employees covered by this Agreement shall not be required to work anywhere on any jobsite where the Union has established a picket line or withdrawn its Employees in a labor dispute.

### ARTICLE XIX
### ACCESS TO PREMISES

Authorized representatives of the Union shall have access to all construction projects, provided that they first notify the employer of their arrival, that they do not stop the progress of the project (except to the extent as may be authorized in this Agreement), and provided further that such representatives fully comply with the visitor and security rules established for the construction project by the general contractor and the owner. It shall be the duty of the Employer to provide adequate passes, as requested by the Union, provided the Employer is able to do so.

### Article XX
### APPROVALS

Paragraph 1. It is mutually agreed that the Construction and General Laborers' District Council of Chicago and Vicinity shall, in writing, by and authorized officer, approve and guarantee the fulfillment of all the provisions of this Agreement by the party of the second part.

Paragraph 2. Inasmuch as the employment of Laborers is directly affected by the hours of employment of Carpenters, Bricklayers, Plasterers, Cement Masons and Hoisting Engineers engaged in construction, it is agreed that should the trades change their work day or work week, other than provided in this Agreement, either party hereto shall have the right upon ten (10) days' writ-

48

ten notice through United States Registered Mail Delivery, to amend this Agreement to meet such conditions of employment.

Paragraph 3. SAVING CLAUSE: Any provision contained herein which is contrary to or held to be in violation of any State or Federal Law shall be void and of no force or effect, and this Contract shall be construed as though such void provision were not a part hereof, it being intended that the other provisions of this Contract shall not be affected thereby.

Paragraph 4. EMPLOYER'S WARRANTY: The signatory Associations and its bargaining association represent and warrant that they are the bargaining agents of all the Individual Employers of the signatory Associations who are now or hereafter become members of said signatory Associations and who assign to one or more of the Associations full authority to negotiate and execute this Agreement.

Paragraph 5. EXECUTION: It is expressly agreed and understood that execution of this Agreement by authorized representatives of the signatory Associations shall be conclusively presumed sufficient legal execution by all individual contractors represented by said Associations and that individual executions are not required for this Agreement to be binding on such Contractors.

49

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
      Business Manager

By: _____
      Secy.-Treasurer

CONCRETE CONTRACTORS ASSOCIATION
OF GREATER CHICAGO

By: _____
      President

50

ADDENDUM
CONSTRUCTION INDUSTRY SERVICE
CORPORATION JOINT LABOR-MANAGEMENT
UNIFORM DRUG/ALCOHOL ABUSE PROGRAM

I. Policy Statement

The parties recognize the problems created by drug and alcohol abuse and the need to develop prevention and treatment programs. (Company Name), and the signatory unions seek to protect people and property, and to provide a safe working environment. The purpose of the following program is to establish and maintain a drug free, alcohol free, safe, health work environment for all of its employees.

II. Definitions

a. Company Premises - The term "Company Premises" as used in this policy includes all property, facilities, land, buildings, structures, automobiles, trucks and other vehicles owned, leased or used by the company. Construction job sites for which the company has responsibility are included.

b. Prohibited Items & Substances - Prohibited substances include illegal drugs (including controlled substances, look alike drugs and designer drugs), alcohol beverages, and drug paraphernalia in the possession of or being used by an employee on the job.

c. Employee - Individuals, who perform work for (Company Name), including, but not limited to, management, supervision, engineering, craft workers and clerical personnel.

d. Accident - Any event resulting in injury to a person or property to which an employee, or contractor/contractor's employee, contributed as a direct or indirect cause.

e. Incident - An event which has all the attributes of an accident, except that no harm was caused to person or property.

51

f. Reasonable Cause - Reasonable cause shall be defined as excessive tardiness, excessive absenteeism, and erratic behavior such as noticeable imbalance, incoherence, and disorientation.

III. Confidentiality

a. All parties to this policy and program have only the interest of employees in mind, therefore, encourage any employee with a substance abuse problem to come forward and voluntarily accept our assistance in dealing with the illness. An employee assistance program will provide guidance and direction for you during your recovery period. If you volunteer for help, the company will make every reasonable effort to return you to work upon your recovery. The company will also take action to assure that your illness is handled in a confidential manner.

b. All actions taken under this policy and program will be confidential and disclosed only to those with a "need to know".

c. When a test is required, the specimen will be identified by a code number, not by name, to insure confidentiality of the donor. Each specimen container will be properly labeled and made tamper proof. The donor must witness this procedure.

d. Unless an initial positive result is confirmed as positive, it shall be deemed negative and reported by the laboratory as such.

e. The handling and transportation of such specimen will be properly documented through the strict chain of custody procedures.

IV. Rules - Disciplinary Actions - Grievance Procedures

1. *Rules* - All employees must report to work in a physical condition that will enable them to perform their jobs in a safe and efficient manner. Employees shall not:

a. Use, possess, dispense or receive prohibited substances on or at the job site; or

52

b. report to work with any measurable amount of prohibited substances in their systems.

2. *Discipline* - When the company has reasonable cause to believe an employee is under the influence of a prohibited substance, for reasons of safety, the employee may be suspended until test results are available. If no test results are received after three (3) working days, the employee, if available, shall be returned to work with back pay. If the test results prove negative, the employee shall be reinstated with back pay. In all other cases:

a. Applicants testing positive for drug use will not be hired.

b. Employees who have not voluntarily come forward, and who test positive for drug use, will be terminated.

c. Employees who refuse to cooperate with testing procedures will be terminated.

d. Employees found in possession of drugs or drug paraphernalia will be terminated.

e. Employees found selling or distributing drugs will be terminated.

f. Employees found under the influence of alcohol while on duty, or while operating a company vehicle, will be subject to termination.

3. *Prescription Drugs* - Employees using prescription medication which may impair the performance of job duties, either mental or motor functions, must immediately inform their supervisors of such prescription drug use. For the safety of all employees, the company will consult with you and your physician to determine if a re-assignment of duties is necessary. The company will attempt to accommodate your needs by making any appropriate re-assignment. However, if a re-assignment is not possible, you will be placed on temporary medical leave until released as fit for duty by a prescribed physician.

4. *Grievance* - All aspects of this policy and program shall be subject to the grievance procedure contained in the applicable collective bargaining agreement.

V. Drug/Alcohol Testing

The parties to this policy and program agree that under certain circumstances, the company will find it necessary to conduct drug and alcohol testing. While "random" testing is not necessary for the proper operations of this policy and program, it may be necessary to require testing under the following conditions:

a. A pre-employment drug and alcohol test may be administered to all applicants for employment. Employees recalled to work by an Employer, and employees referred to an Employer by the Union who are requested to be tested, shall be compensated at their regular hourly rate of pay for the time required in such testing;

b. A test may be administered in the event a supervisor has a reasonable cause to believe that the employee has reported to work under the influence, or is or has been under the influence while on the job; or has violated this drug policy. During the process of establishing reasonable cause for testing, the employee has the right to request his on-site representative to be present;

c. Testing may be required if an employee is involved in a workplace accident/incident or if there is a workplace injury;

d. Testing may be required as a part of a follow-up to counseling or rehabilitation for substance abuse, for up to a one (1) year period.

Each employee will be required to sign a consent and chain of custody form, assuring proper documentation and accuracy. If an employee refuses to sign a consent form authorizing the test, ongoing employment by the company will be terminated.

Drug testing will be conducted by an independent accredited laboratory (National Institute on Drug Abuse

54

and/or College of American Pathology), and may consist of either blood or urine tests, or both as required. Blood tests will be utilized for post accident investigation only.

The company will bear the costs of all testing procedures.

VI. Rehabilitation and Employee Assistance Program

Employees are encouraged to seek help for a drug or alcohol problem before it deteriorates into a disciplinary matter. If an employee voluntarily notifies supervision that he or she may have a substance abuse problem, the company will assist in locating a suitable employee assistance program for treatment, and will counsel the employee regarding medical benefits available under the company or union health and welfare/insurance program.

If treatment necessitates time away from work, the company shall provide for the employee an unpaid leave of absence for purposes of participation in an agreed upon treatment program. An employee who successfully completes a rehabilitation program shall be reinstated to his/her former employment status, if work for which he/she is qualified exists.

Employees returning to work after successfully completing the rehabilitation program will be subject to drug tests without prior notice for a period of one year. A positive test will then result in disciplinary action as previously outlined in this policy and program.

Affidavit of Agreement Between
Construction and General Laborers' District Council of Chicago and Vicinity
and
Concrete Contractors' Association of Greater Chicago

WHEREAS, the Construction and General Laborers' District Council of Chicago and Vicinity ("Union") and the Concrete Contractors' Association of Greater Chicago ("CCA") have entered into a collective bargaining agreement in effect on behalf of November Employers, has entered into a collective bargaining agreement in effect from June 1, 2014 through May 31, 2018 for hours worked by Laborers ("Agreement").

WHEREAS, the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Welfare Fund") receives contributions from Employer bound to the Agreement for hours worked by Laborers thereunder.

WHEREAS, the Trustees of the Welfare Fund have recommended that the Fund's Retiree Plan of Benefits be established as a separate plan governed by a separate Trust Agreement and Plan documents and be funded in part like to separate allocation of the Welfare Fund's retirees.

WHEREAS, the Trustees of the Welfare Fund have agreed to enter as Trustees of the separate retiree plan to be known as the Chicago Laborers' District Council Retiree Health & Welfare Fund ("Retiree Welfare Fund") and have executed an appropriate Trust Agreement and adopted appropriate Plan documents.

WHEREAS, the Union has agreed to allocate its interest in the contributions due to other benefits, effective June 1, 2014, that would provide for increases in the amounts applicable to retiree and active employee health benefits to be known in Fund in Exhibit A, attached hereto and made a part.

WHEREAS, the Union and CCA agree that contributions for welfare benefits for work performed on or after June 1, 2014, should be allocated and paid in the amounts set forth in Exhibit A to the Welfare Fund for active Employees and to the Retiree Welfare Fund for retirees.

NOW THEREFORE, the Union and CCA agree as follows:

1. Effective June 1, 2014, all reference in the Agreement to the Welfare Fund concerning contributions and other obligations are intended to include the Retiree Welfare Fund and allocated among the respective contributions set forth in Exhibit A to the Welfare Fund and Retiree Welfare Fund respectively, which amounts may be increased in future years at the discretion of the Union from the agreed-upon package.

2. CCA, for and on behalf of the Employers it represents for bargaining purposes, agrees to be bound by the Agreement and Declaration of Trust establishing the Chicago Laborers' District Council Retiree Health & Welfare Fund effective June 1, 2014.

3. Effective June 1, 2014, any provisions concerning eligibility for or payment of the Welfare Fund Trustees shall apply to the Retiree Welfare Fund and the application of its Trustees.

4. The appointment of additional Employer Trustees to either the Welfare Fund or Retiree Welfare Fund shall be conditioned upon an Association member of membership retaining employment and the Agreement and approval of the Union.

IN WITNESS WHEREOF, the Parties have executed this Addendum to be entered into as described above and to be effective as of June 1, 2014.

| CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY | CONCRETE CONTRACTORS' ASSOCIATION OF GREATER CHICAGO |
|---|---|
| By: _____ | By: _____ |
| By: _____ | |
| Date: 7/8/14 | Date: 7/8/14 |

56

**EXHIBIT A**

| | |
|---|---|
| Current Hourly Contribution Rate | $13.38 |
| June 1, 2014 Hourly Increase | $ .40 |
| **TOTAL:** | $13.78 |

New Contribution Rates Effective June 1, 2014:

| | |
|---|---|
| Laborers Welfare Fund | $ 9.98 |
| Chicago Laborers' District Council Retiree Health and Welfare Fund | $ 3.80 |
| **TOTAL:** | $13.78 |

57

NOTES

58

# RESTATED AGREEMENT

### AND

# DECLARATION OF TRUST

#### CREATING

# LABORERS' PENSION FUND

With Amendments Through
May 31, 2002

EXHIBIT

B-3

(b)   To enforce the provisions of the Pension Plan and the rules and regulations adopted by the Trustees in a uniform manner with respect to individuals similarly situated.

(c)   To determine questions arising under the Pension Plan or this Agreement, including the power to determine the rights of Employees and their Beneficiaries, and their respective benefits, and to remedy ambiguities, inconsistencies or omissions.

## ARTICLE VII

## FUNDING PENSION PLAN BENEFITS

Section I.    IN GENERAL.   In order to fund the benefits provided under the Pension Plan, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreement or Participation Agreement, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be the same as the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union which covers Employees performing similar work. No

Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the provisions of a Collective Bargaining Agreement or Participation Agreement and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer has entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the

-25-

liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10%, waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments owed by an Employer pursuant to an installment agreement, shall bear interest up to the prime rate of interest plus two points charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority to delegate the collection of contributions to a Collection Committee, which, in its discretion, may assess a lesser or greater amount or waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Fund. The Collection Committee may include trustees of the Laborers' Welfare Fund as members of the Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including court fees, audit fees, investigative costs, etc. The term "reasonable attorneys' fees" as used herein shall mean all

attorneys' fees in the amounts for which the Trustees become legally obligated including recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority, in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees, in lieu of any cash deposit, a bond in an amount not less than Five Thousand Dollars ($5,000.00) or in an amount consistent with the terms of the current collective bargaining agreements. In the event an Employer is repeatedly delinquent in its contribution payments to the Pension Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current collective bargaining agreements, in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. <u>REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS.</u> The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such

-27-

other information as the Trustees may reasonably require in connection with the administration of the Trust and Pension Plan. The Trustees may at any time have an audit made by an independent certified public accountant or its representatives of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures developed and communicated by the Administrator from the beginning of such Employer's participation in the Pension Fund forward unless given written authorization by the Administrator upon request to destroy said record. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

<u>ARTICLE VIII</u>

<u>FILING CLAIMS AND REVIEW OF DENIALS OF CLAIM</u>

<u>Section 1.</u>    <u>FILING OF A CLAIM.</u>  Claims for the payment of any benefits provided by the Pension Plan shall be filed, in writing, in accordance with the Rules and Regulations set forth in Article 7 of the Pension Plan.

-28-

## ADDENDUM A

### RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
### AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

2

## LABORERS' PENSION AND WELFARE FUNDS

## POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. Section 1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

2

LABORERS' PENSION AND WELFARE FUNDS

POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. New Employers. New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. Honor Roll Employers. Employers with a history of adequate record keeping and timely payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. Other Contributing Employers. Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

1

4. **Employers Subject to Special Audits.** At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. **New Employers.** If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. **Honor Roll Employers.** Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. **Other Contributing Employers.** Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

May-09-2007 12:26pm   From-Laborers' Pen & Wel Funds                    T-361   P.002/008   F-616

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
CREATING LABORERS' PENSION FUND

WHEREAS, Article XII of the Restated Agreement and Declaration of Trust ("Trust Agreement") of the Laborer's Pension Fund (the "Fund") provides that the Board of Trustees have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching

1

May-09-2007 12:16pm   From-Laborers Pen & Wel Funds                T-351   P.009/008   F-615

themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

## I.

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

## II.

The following is added as Section (4) to Article VII, "Funding Pension Plan Benefits":

"Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)   EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)   EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

2

May-08-2007  12:28pm  From-Laborers Pen & Wel Funds

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)  PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION. The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)  MISCELLANEOUS PROVISIONS. The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer."

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3.

May-08-2007  12:26pm  From-Laborers' Pen & Wel Funds

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | |
|---|---|---|
| _Charles Cohen_ 9-18-06 | | _Joseph Coconato_ 9/18/06 |
| CHARLES COHEN  DATE | | JOSEPH COCONATO  DATE |
| _Alan C. Esche_ 9/18/06 | | _James P. Connolly_ 9/18/06 |
| ALAN ESCHE  DATE | | JAMES P. CONNOLLY  DATE |
| _Robert G. Kaug_ 9/18/06 | | _J. Michael Lazzaretto_ 9/18/06 |
| ROBERT G. KAUG  DATE | | J. MICHAEL LAZZARETTO  DATE |
| _Richard E. Grabowski_ 9/18/06 | | _Frank Riley_ 9/18/06 |
| RICHARD E. GRABOWSKI  DATE | | FRANK RILEY  DATE |
| _David H. Loric_ 9/18/06 | | _Larry Wright Jr._ 9/18/06 |
| DAVID H. LORIG  DATE | | LARRY WRIGHT  DATE |
| _Gary Lundsberg_ 9/18/06 | | _Jeff Ziemann_ 9-18-06 |
| GARY LUNDSBERG  DATE | | JEFF ZIEMANN  DATE |

4

# RESTATED AGREEMENT AND DECLARATION OF TRUST OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

Restated through
July 1, 2003



EXHIBIT
B-4

1

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. IN GENERAL. In order to fund the Benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Welfare

Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

16

## ADDENDUM A

### RECORDS REQUIRED TO BE RETAINED BY EMPLOYERS
### AND PRODUCED FOR AUDITS

The following records shall be maintained and retained by all contributing employers to the Benefit Funds for at least six years from the contribution date and shall be produced for inspection and copying by an auditor of the Benefit Funds upon written request:

1. Quarterly and annual payroll tax returns, including, but not limited to, federal quarterly form 941's, federal annual form W-2's, W-3's, 940's, 1099's and state quarterly unemployment returns (form UC-3).

2. Payroll journals and/or registers which include or identify employees' social security numbers, hourly rates of pay, hours worked and the time period in which the work was performed.

3. Individual earnings records for all employees of the employer not shown on payroll journals or registers, including social security number and work classification (or code or clock or ID number), hourly rates of pay, hours worked and the time period in which the work was performed.

4. Cash disbursement journals and general ledgers.

5. Copies of all contribution reports and proof of payment (canceled checks or records of canceled checks) of all contributions to the Laborers' Funds and to all other trade union fringe benefit funds to which the employer contributed.

6. Copies of all dues records and proof of payment (canceled checks or records of canceled checks) of all union dues submitted to the Laborers' District Council.

7. Records showing all amounts paid to all persons or entities that performed work for the employer as independent contractors or subcontractors, if any, including copies of any federal form 1099's issued by the employer.

8. Daily time records filed by employees or supervisors.

9. Source documents and lists of job codes and equipment codes.

10. Certified payrolls for public sector jobs where such payrolls are required.

11. Employee personnel files including, but not limited to, last known addresses and telephone numbers, any documents which demonstrate employees' job classifications and/or status as an apprentice, journeyman, foreman, superintendent, or supervisor. (Confidential medical records or other private records not relevant to the establishment of an employee's job classification shall not be disclosed.)

1

12. Bank account statements and canceled checks from any account used in conjunction with the employer's business.

13. If records of all hours worked, rates of pay and classifications are not provided in the records listed in items 1 through 10, the employer shall maintain monthly lists of all employees not shown on payroll records, showing Social Security number and work classification (or code or clock or ID number), rates of pay and hours worked.

Honor Roll Employers shall be required only to produce basic records needed by the Benefit Funds' auditors to do an audit, specifically items 1 through 7 above. However, if an initial examination of such limited records discloses significant record keeping errors or failures to contribute, the auditor may request additional records listed above. In the absence of evidence of a deliberate failure by an Honor Roll Employer to contribute on behalf of a bargaining unit employee, the rebuttable presumptions provided for in the attached Policy for Retention and Production of Employer Records shall not apply to such Honor Roll Employer.

Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced. The judgment of the trustees in interpreting and applying this policy shall be conclusive and binding on all parties.

Adopted January 9, 2002

LABORERS' PENSION AND WELFARE FUNDS

POLICY FOR RETENTION AND PRODUCTION OF EMPLOYER RECORDS

As Adopted by the Boards of Trustees
Effective as of April 1, 2006

WHEREAS, Section 209 of the Employee Retirement Income Security Act of 1974 , as amended ("ERISA"), 29 U.S.C. Section1059, requires employers obligated to contribute to employee benefit funds to maintain records with respect to its employees which are sufficient to determine benefits due to such employees of which may become due to them; and

WHEREAS, the Trustees of the Laborers' Pension Fund and the Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds") have the authority under their respective Trust Agreements to establish rules, regulations and policies regarding records which must be maintained by employers in order to administer the Benefit Funds; and

WHEREAS, the Trustees of the Benefit Funds have found that most contributing employers maintain proper records and make all required contributions to the Benefit Funds, nevertheless, there are employers who are bound by the Trust Agreements of the Benefit Funds who fail to maintain records which are adequate for the Funds to determine whether proper contributions have been made on behalf of eligible employees and that some of such employers do so deliberately in order to avoid their obligations to make such payments; and

WHEREAS, the practices of employers who fail to maintain records sufficient to enable the Benefit Funds to conduct thorough payroll audits cause their employees to lose valuable pension and welfare benefits and cause the Benefit Funds to lose contractually required contributions and investment earnings on those contributions; and

WHEREAS, the practices of employers who fail to maintain adequate records cause the Benefit Funds to incur substantial additional administrative and legal expenses in order to determine proper amounts owed to the Funds by such employers; and

WHEREAS, enforcement of a policy specifying the records required to be maintained and produced increases the ability of the Funds to prove the contributions owed by delinquent employers and thereby to provide proper credit to the employees and their beneficiaries;

NOW THEREFORE, the Trustees resolve that the following policies are adopted by the Benefit Funds effective as of March 1, 2002:

1

1. Except as otherwise provided herein, all contributing employers to the Benefit Funds shall maintain and make available for inspection and copying by an auditor of the Benefit Funds the records listed on Appendix A, attached hereto.

2. Any employer obligated to contribute to the Benefit Funds who fails to maintain and make available for inspection and copying to an auditor of the Benefit Funds the requisite records listed on Appendix A shall bear the burden of proof with respect to the exclusion of any employee from coverage by the collective bargaining agreement with the Union. In those cases where an employer asserts that an employee is excluded because he/she is a member of another bargaining unit, the employer must submit tangible evidence of that fact, e.g., a union membership card, contribution records maintained for the benefit funds of the other bargaining unit, commercial drivers' license if it is asserted that an employee is a truck driver rather than a laborer and workers' compensation policies, forms and applications listing an employee's job classification or other business records. The affidavit of an employer's representative or officer unsupported by documentary evidence shall not be sufficient to meet the employer's burden of proof. Affidavits solicited and obtained ex parte by an employer's representative from employees, for which there is no corroborative evidence in the form of records maintained in the ordinary course of business, shall not be sufficient to meet the employer's burden of proof.

3. When an employer has failed to maintain or make available the requisite records, there shall be a rebuttable presumption that any employee listed as a possible laborer by an auditor, Field Representative or attorney representing the Benefit Funds was a laborer. There shall also be rebuttable presumptions concerning the hourly rate and number of hours worked as follows: (a) that the employee was paid only $10.00 per hour if no record of wage rates was made by the employer, and/or (b) that the employee worked 72 hours per week if no record of the number of hours was maintained; whichever of these presumptions results in the higher amount of contributions shall be applied. When evidence exists that a different hourly rate was paid to employees of an employer that failed to maintain the required records, at the discretion of the Director of the Field Department, a different hourly rate may be presumed for purposes of determining the amount of contributions owed by the employer. If that evidence shows that the employer paid a rate lower than $10.00 per hour to any employees doing bargaining unit work, then that lower rate shall be presumed to be the actual rate paid to all employees for whom adequate records were not kept. Similarly, where evidence exists of a different number of hours worked, the Director may apply a different number of hours for determining the contributions owed, and this number of hours worked shall be presumed correct. All wages computed as provided in this paragraph shall be presumed to be paid as straight time wages regardless of the number of hours worked unless the employer has provided documentation, in the form required by the terms of this policy, showing that it followed the requirements of the Fair Labor Standards Act and/or the applicable collective bargaining agreement as to the payment of overtime.

4. An employer that fails to maintain the requisite records and fails to cooperate with the Trustees in establishing the paid wage rates, actual hours of work and contributions owed to the Benefit Funds shall be liable to the Benefit Funds and any related organizations, for the contribution amounts determined as provided herein and also for 20% liquidated damages, compound interest at the rate of prime plus 2 points (as determined by the Administrator), auditor's and attorney's fees and any other expenses of collection including investigative costs.

LABORERS' PENSION AND WELFARE FUNDS

POLICY FOR SCHEDULING OF AUDITS

As Adopted by The Boards of Trustees
Effective as of April 1, 2006

Contributing employers to the Laborers' Pension Fund and the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity (collectively, the "Benefit Funds"), shall be audited periodically in accordance with the procedures adopted by the Collection Committee of the Benefit Funds. The Director of the Field Department, in cooperation with the Benefit Funds' auditors, shall prepare a schedule for auditing contributing employers in accordance with the following procedures.

Two types of audits shall be conducted: "full audits" in which payroll and other records on all employees are examined and "sampling audits" in which a selection of payroll and other records are tested to enable the compliance auditor to make a reasonable determination that there are no delinquencies. A sampling audit should include a review of all types of records (e.g. payroll records, tax records, cash disbursement records, reports to other benefit funds, etc.) Where a sampling audit discloses delinquencies or related record discrepancies, a full audit shall be conducted.

Employers shall be scheduled for either full audits or sampling audits in groups based upon the contribution histories of the employers. Either a sampling or full audit shall be conducted at least once every five (5) years. Any employer that fails to schedule an audit and submit records for review within 45 days from the date of the audit request will be liable for all costs of compelling and enforcing the audit request. The following procedures shall be used:

## AUDIT PERIOD

1. **New Employers.** New employers shall be scheduled for audits within the first year in which contributions to the Benefit Funds are required.

2. **Honor Roll Employers.** Employers with a history of adequate record keeping and timely payments to the Benefit Funds ("Honor Roll Employers"), shall be required to submit to audits every three (3) to five (5) years. Following an audit showing adequate record keeping and correct payments, such an employer shall be designated an Honor Roll Employer and shall be selected randomly for an audit between the third and fifth year thereafter. (Such employers may opt for a scheduled audit every three years.) An inadvertent shortage of no more than the greater of $1000 or two percent (2%) of required contributions determined on a full audit covering three or more years of contributions to the Benefit Funds shall not disqualify an employer from inclusion in this group.

3. **Other Contributing Employers.** Employers that are not classified as New or Honor Roll Employers or who have been assessed significant delinquencies to the Benefit Funds or any of the ancillary funds to which contributions are owed pursuant to the collective bargaining agreements of the Laborers' District Council shall be scheduled for full audits at least once every three (3) years.

4. Employers Subject to Special Audits. At the discretion of the Director of the Field Department full audits of employers obligated to contribute to the Benefit Funds may be conducted at any time based upon information concerning possible delinquencies, e.g., failure to file monthly remittance reports, failure to pay contractually required wage rates, information concerning a possible closing or sale of the business, information that the employer is operating an alter ego or similar bases suggesting possible delinquencies.

## FULL AND SAMPLING AUDITS

1. New Employers. If there is a sufficient number of employees of a New Employer, the auditor of the Benefit Funds may do a sampling audit to determine if the employer is maintaining accurate records and making required contributions, otherwise the auditor will do a full audit. An important purpose of audits for new employers is to inform employers of the procedures for contributing to the Benefit Funds and the requisite records to be maintained. *

2. Honor Roll Employers. Sampling audits shall be used for Honor Roll Employers if they have sufficient employees to warrant use of sampling methods. If a sampling audit discloses inaccurate or incomplete record keeping or evidence of significant delinquencies, a full audit shall be done.

3. Other Contributing Employers. Full audits shall be conducted if employers are not qualified as New or Honor Roll Employers.

4. Notwithstanding the foregoing, the Collection Committee or the Director of the Field Department may, in their discretion, determine that a full audit shall be done of any employer or that, where a sampling audit is to be conducted, specific records shall be produced.*

* For information concerning the requisite records to be maintained, see the Laborers' Pension and Welfare Funds Policy for Retention and Production of Employer Records, effective as of April 1, 2006 and the Records Required to be Retained By Employers and Produced for Audits adopted January 9, 2002.

AMENDMENT TO THE
RESTATED AGREEMENT AND DECLARATION OF TRUST
OF THE HEALTH AND WELFARE DEPARTMENT OF THE CONSTRUCTION AND
GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY

WHEREAS, Article XI of the Restated Agreement and Declaration of Trust ("Trust Agreement") provides that the Board of Trustees of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity ("Fund") have the authority to amend the Trust Agreement;

WHEREAS, Article IV of the Fund's Trust Agreement sets forth the powers and duties of the Trustees;

WHEREAS, the Trustees have an obligation to protect the interests of the Plan's Participants and to protect the assets of the Fund;

WHEREAS, the Trustees are aware of situations in which contributing Employers have ceased business operations leaving a large indebtedness to the Fund without a reasonable likelihood of the Fund collecting such delinquent contributions;

WHEREAS, the individual officers and owners of some Employers have secured jobs knowing that they will not comply with their legal obligations to the Fund by keeping accurate records of their laborer employees' employment and make all the required contributions to the Fund; and

WHEREAS, such illegal conduct causes substantial losses to the Fund and deprives Employers who comply with its obligations to the Fund of opportunities to secure employment for their laborer employees; and

WHEREAS, the individual officers, partners or owners of some contributing Employers have used various entities to avoid liability to the Fund for contributions that would otherwise be due and then created new companies in order to continue to operate using such illegal practices;

WHEREAS, in some instances such individual officers or owners have accepted employment as a supervisor or manager with another contributing Employer and been responsible for causing such Employers to fail to comply with their obligations to keep accurate records and make all required contributions;

WHEREAS, the Trustees have determined that certain individuals and entities (as hereinafter defined "Deadbeat Employers") who engage in these practices willfully or with reckless disregard for their legal obligations or with repeated incompetence at the expense of their employees and the Fund have caused the Fund to incur large financial losses and employees to lose benefit coverage for which they had worked;

1

WHEREAS, the Trustees have concluded that such Deadbeat Employers' practices result in unfair competition for other contributing Employers often with the result of enriching themselves and depriving lawful Employers of needed work, and depriving the Fund's participants of benefits;

WHEREAS, it is the desire of the Trustees to amend the Trust Agreement in order expressly to provide that the Fund may impose appropriate protective financial requirements on any Employer that is owned by or that hires a Deadbeat Employer in a managerial or supervisory role;

NOW THEREFORE, the undersigned Trustees of the Fund, pursuant to the authority of Article XII of the Restated Agreement and Declaration of Trust, do hereby adopt the following Amendment to the Restated Agreement and Declaration of Trust effective as of August 1, 2006:

<div align="center">I.</div>

The following is added as an additional Paragraph under Article I, "Certain Definitions", Section 2, "Employer":

"A "Deadbeat Employer" is defined as any entity or individual (including, but not limited to a corporation, partnership, or sole proprietorship and its respective officers, partners or owners) who have, or previously had in the last 10 years, incurred substantial liability to the Fund for delinquent contributions and then ceased operations or became insolvent, without satisfying such substantial liability and without any reasonable likelihood of paying the amounts due to the Fund. For purposes of this Section, substantial liability shall not be less than $30,000."

<div align="center">II.</div>

The following is added as Section (4) to Article VI, "Employer Contributions":

"Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a)     EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b)     EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of

<div align="center">2</div>

the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c)  PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION. The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employer with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provisions of subsections (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employer, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

(d)  MISCELLANEOUS PROVISIONS. The bond referenced in this Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer."

III.

Except as hereinbefore amended, the Trust Agreement shall remain in full force and effect in accordance with its terms.

3.

IN WITNESS WHEREOF, the undersigned Trustees have caused this Amendment to be executed on the dates appearing opposite their respective names.

| | | | |
|---|---|---|---|
| _(signature)_ | | _(signature)_ | 9/19/06 |
| CHARLES J. GALLAGHER | DATE | JAMES P. CONNOLLY | DATE |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| ALAN ESCHE | DATE | RANDY DALTON | DATE |
| _(signature)_ | 9/19/06 | _(signature)_ | 9-19-06 |
| RICHARD E. GRABOWSKI | DATE | MARTIN FLANAGAN | DATE |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| DAVID H. LORIG | DATE | LIBERATO NAIMOLI | DATE |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| DENNIS MARTIN | DATE | SCOTT PAVLIS | DATE |
| _(signature)_ | 9/19/06 | _(signature)_ | 9/19/06 |
| TIM J. SCULLY | DATE | FRANK RILEY | DATE |

4

# AGREEMENT
# AND
# DECLARATION OF TRUST
# OF THE
# CHICAGO LABORERS'
# DISTRICT COUNCIL
# RETIREE HEALTH AND
# WELFARE FUND

Effective as of
June 1, 2014



EXHIBIT

B-5

weighted) of Union Trustees and Employer Trustees;

(e) If a Trustee is absent from a meeting of the Board of Trustees, he may, but need not, cast a vote on any matter by written instrument filed with or telegram addressed to the Board of Trustees; and

(f) If a Trustee is absent from any meeting, then, to the extent permitted by law, he shall not be liable for any matter considered at that meeting on which he has not case a vote as provided by the foregoing sentence.

The certificate of one Employer Trustee and one Union Trustee or of the Administrator that the Board of Trustees has taken or authorized any action shall be conclusive in favor of any person relying on the certificate.

Section 2. RECORD OF TRUSTEES ACTIONS. The Trustees may select a Secretary to serve for a term of three (3) calendar years or until a successor has been duly elected. The Administrator, or in his absence a person appointed by the Trustees, shall prepare a draft of the minutes of each meeting and provide a copy to the Trustees as soon as practicable after the meeting is held. The Trustees will review and approve the minutes.

The Administrator shall act as the Fund's executive officer, with full power of administration under the general direction of the Trustees. The Trustees are specifically authorized to delegate to the Administrator any of the powers vested in the Trustees by this Agreement.

Section 3. ADMINISTRATIVE PERSONNEL. The Board of Trustees shall appoint the Administrator, actuary, Fund Counsel, auditor and such other managerial and legal and administrative staff as they deem reasonably necessary for the efficient administration of the Trust, and may delegate the appointment of Fund personnel to the Administrator.

Section 4. DISBURSEMENT OF RETIREE WELFARE FUND. The Administrator, or any other Retiree Welfare Fund employee designated by the Trustees, may sign checks for any disbursement from the Retiree Welfare Fund approved by the Trustees.

Section 5. EXECUTION OF NOTICES AND DOCUMENTS. Except as specifically provided in Section 4 next above, the Board of Trustees may designate any equal number of Union Trustees and Employer Trustees to jointly execute, in writing, on behalf of the Board of Trustees, any notice or document, which executed notice or document shall be conclusive in favor of any person relying thereon.

## ARTICLE VI
## EMPLOYER CONTRIBUTIONS

Section 1. IN GENERAL. In order to fund the retiree benefits provided for by this Agreement, each Employer, for the period that it is obligated by a Written Agreement, shall make contributions to the Trustees pursuant to regulations established by the Trustees at the times required by that agreement. The rate of contributions shall be determined by the applicable

11

Collective Bargaining Agreements or Participation Agreements, together with any amendments, supplements or modifications thereto. Notwithstanding the preceding sentence, if an Employer is required to make contributions by reason of a Participation Agreement or other Written Agreement that is not a Collective Bargaining Agreement, the amount of its contributions shall be not less than the amount required by the Collective Bargaining Agreement in effect between the Employer Association and the Union having jurisdiction over the geographic area in which the covered Employees perform their work. No Employee shall be permitted to contract or otherwise agree with or permit his Employer to provide wage or benefit payments which do not conform with the amount of contributions required under the foregoing provisions of this Section and any such contract or agreement shall be null and void. It shall not be a defense to any claim by the Trustees or an Employee for payment of delinquent contributions from an Employer that such Employer had entered into an agreement with any Employee purporting to waive the Employee's right to strict compliance with the provisions of the applicable Collective Bargaining Agreement or a Participation Agreement. All contributions shall be paid in the manner and form required by the Trustees.

Section 2. DEFAULT IN PAYMENT OF CONTRIBUTIONS. Nonpayment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payments. The Trustees may take any action necessary to enforce payment of the contributions and penalties due hereunder, including, but not limited to, proceedings at law and in equity. Any such action shall not prejudice the Union in any action it may wish to take on account of such nonpayment. The Trustees are authorized to establish a reasonable and lawful grace period by which contributions must be received; Employers making contributions that are not received before the expiration of said period and any Employer making late payments due under an installment agreement shall be assessed liquidated damages of 10% of the amount of the contributions which are owed. All Employers party to or otherwise bound by this Agreement acknowledge that the liquidated damages will be used to defer administrative costs arising by said delinquency and acknowledge the costs to be actual and substantial though difficult to ascertain; however the Employers acknowledge these costs to be at a minimum of 10% waiving the necessity of any additional proof thereof. In addition, the delinquent contributions and any payments by the Employer pursuant to an installment agreement, shall bear interest, up to the prime rate plus two points, charged by the Fund's custodian bank (or any other bank selected by the Trustees) or such other lawful amount as determined by the Trustees from the due date until totally satisfied. The Trustees are hereby given the power and authority, in their discretion, to assess a lesser amount or to waive or suspend payment of liquidated damages, interest, audit fees or investigative costs in accordance with rules and procedures adopted by the Collection Committee of the Board of Trustees and to compromise claims for delinquent contributions and related liabilities and collection costs where appropriate to settle cases favorably for the Retiree Welfare Fund. The Collection Committee may include trustees of the Laborers' Pension Fund as members of such Collection Committee.

In the event an Employer party to this Agreement or otherwise bound thereby becomes delinquent in his contributions or an installment agreement, or fails to post a bond as required, or refuses to provide the records required to be kept by contributing employers or submit to an audit, said delinquent Employer shall be liable for reasonable attorneys' fees and for all reasonable costs incurred in the collection process, including but not limited to, court fees, audit

fees and investigative costs. The term "reasonable attorneys' fees" as used herein shall mean all attorneys' fees in the amounts for which the Trustees become legally obligated for actions seeking delinquent contributions, to compel an audit, or for recovery of liquidated damages, audit costs, filing fees and any other expenses incurred by the Trustees.

The Trustees are hereby given the power and authority in their discretion, to require any Employer to deposit with the Trustees, in advance, as a guarantee for the payment of monthly contributions, an amount equal to three (3) times the monthly contributions of such Employer, as estimated by the Trustees. At the option of the Trustees the Employer shall furnish the Trustees in lieu of any cash deposit a bond in an amount not less than Five Thousand Dollars ($5,000.00), or in an amount consistent with the terms of the current Collective Bargaining Agreement to which the Employer is subject. In the event an Employer is repeatedly delinquent in its contribution payments to the Retiree Welfare Fund, the Trustees have the power and authority to require that Employer to purchase a bond in excess of $5,000.00 or the amounts set forth in the current Collective Bargaining Agreements in an amount equal to three (3) times the highest monthly contributions of the Employer in the twelve months prior to any delinquency. The Trustees, in their discretion, may also waive the requirement of a cash deposit or a surety bond in lieu of a personal guaranty when such waiver is warranted.

Section 3. REPORT ON CONTRIBUTIONS AND PRODUCTION OF RECORDS. The Employers shall make all reports on contributions required by the Trustees. Each Employer shall promptly furnish to the Trustees, on demand, the names of its employees, their social security numbers, the hours worked by each employee, and such other information as the Trustees may reasonably require in connection with the administration of the Trust. The Trustees may at any time have an audit made by an independent accounting firm of the payroll of any Employer in connection with the said contributions and/or reports. All Employers shall be required to maintain records in compliance with procedures from the beginning of such Employer's participation in the Trust until given written authorization by the Administrator, upon request, to destroy said records. The Administrator shall require the Employer to designate the classification of all of his employees and if the Employer fails to do so, the Trustees shall conduct an investigation for the purpose of determining the classification of such employees and the results of said investigation shall be conclusive. Attached hereto as Addendum A are the current collection policies concerning the Scheduling of Audits and Retention and Production of Employer Records adopted by the Trustees.

Section 4. ADDITIONAL REQUIREMENTS FOR DEADBEAT EMPLOYERS.

(a) EMPLOYER OWNED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer that is owned, whether in whole or in part, by a Deadbeat Employer shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employers and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(b) EMPLOYER OPERATED BY DEADBEAT EMPLOYER. Subject to the provisions of subsection (c) and following 30 days after receipt by the Employer of the Notice described therein, any Employer whom the Trustees reasonably believe employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the Deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations of the Employer to the Fund shall be deemed by the Fund as a successor employer to the Deadbeat Employer for purposes of the delinquent contribution obligations of the Deadbeat Employer to the Fund and shall (i) be liable to the Fund for the unpaid liabilities of the Deadbeat Employer and (ii) be required to post a bond for the benefit of the Fund in an amount equal to twice the amount of the Deadbeat Employer's prior delinquencies to the Fund.

(c) PROCEDURES BY WHICH AN EMPLOYER MAY AVOID LIABILITY UNDER THIS SECTION. The Fund shall send written notice (the "Notice") to any Employer whom the Trustees reasonably believe, is owned, in whole or part by a Deadbeat Employer, or who employs an officer, partner or owner of a Deadbeat Employer in a managerial or supervisory position or in any other responsible position in which the deadbeat Employer may exercise any control over the assets of the Employer or contribution obligations to the Fund. The Notice will provide the Employers with a date certain, no less than 30 days after the date of transmittal of the Notice to the Employer, to provide evidence, satisfactory to the Trustees, that the Employer should not be subject to the provision of subsection (a) or (b), as applicable, as the Employer deems appropriate in order to avoid liability under this Section. Any Employers, following the date set forth in the Notice from the Fund, who does not provide such satisfactory evidence to the Trustees, shall be subject to the obligations set forth in subsections (a) or (b), as applicable. Any Employer who employs an officer or owner of a Deadbeat Employer in a non-managerial or non-supervisory position or in any other position in which the Deadbeat Employer does not exercise any control over the assets of the Employer or contribution obligations to the Fund will not be considered a successor employer and will not be required to post the bond described in this Section.

14

(d) <u>MISCELLANEOUS PROVISIONS.</u> The bond reference in the Section shall be in addition to any other bond requirements set forth in the Written Agreement. The Trustees shall have discretion to waive the additional bond requirement or to reduce the amount of the bond, when, based on the specific circumstances, the Trustees determine it is reasonable to do so. Whenever a family member of a Deadbeat Employer purportedly has an ownership interest of an Employer that employs an officer, partner or owner of a Deadbeat Employer, there will be a rebuttable presumption that the Deadbeat Employer has substantial control over the assets of that Employer.

<div align="center">

**ARTICLE VII**
**FILING CLAIMS AND REVIEW OF DENIAL OF CLAIM**

</div>

Section 1. <u>FILING OF A CLAIM.</u> Claims for the payment of any retiree benefits shall be filed, in writing, via common carrier, U.S. mail or electronic mail, in accordance with the Rules and Regulations of the Retiree Welfare Fund.

Section 2. <u>ADJUDICATION OF CLAIMS AND APPEALS.</u> The Trustees shall have the authority to adopt procedures for the review of claims and appeals of claims denied in whole or in part in accordance with ERISA and regulations adopted pursuant to ERISA. The Trustees have delegated authority to decide claims to the Claims Department and to decide appeals to the Claims Committee of the Board of Trustees. The procedures may be changed from time to time at the discretion of the Board of Trustees. The current procedures for claims and appeals are set forth in the Summary Plan Description of the Retiree Welfare Fund.

The Trustees and/or the Claims Committee have full discretionary authority to determine eligibility for Benefits under the Plan and to interpret the Plan, all Plan documents, rules, procedures, and the terms of the Trust Agreement. Their decisions and interpretations will be given the maximum deference permitted by law for the exercise of such full discretionary authority, they will be binding upon all involved persons.

<div align="center">

**ARTICLE VIII**
**DUTY TO COOPERATE**

</div>

All of the Trustees and all directors, officers, employees or other representatives of any Employer Association or Council party to this agreement shall be required to assist and cooperate with authorized representatives of the Retiree Welfare Fund, its attorneys, auditors, or other authorized representatives in the prosecution of claims for or against the Retiree Welfare Fund.

Specifically, an Employer shall provide to the Board of Trustees on request in the course of any audit deemed necessary or advisable by the Trustees the records set forth in the Policy for Retention and Production of Employer Records attached hereto as Addendum A.

AGREEMENT AND DECLARATION OF TRUST
ESTABLISHING
THE CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY
TRAINING TRUST FUND

THIS AGREEMENT AND DECLARATION OF TRUST, made and entered into as of the 1st day of June, 1986 by and between THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, A.F.L.-C.I.O., representing its affiliated Local Unions and the members thereof (the "Council") and the BUILDERS' ASSOCIATION OF CHICAGO, the UNDERGROUND CONTRACTORS ASSOCIATION, and the ILLINOIS ROAD BUILDERS' ASSOCIATION, and all other employer associations (the "Associations") who have hereto bargained or may hereafter bargain or enter into collective bargaining agreements or other agreements with the Union, its local affiliates, or with representatives of this Trust, for and on behalf of themselves and their respective members who by virtue of their said membership or otherwise are parties to collective bargaining agreements with the Union or any of its local affiliates or are parties to this Agreement or are otherwise bound to the provisions hereof as hereinafter provided, and other employers in the building and construction industry who may not be members of any association but who are included in the term "Employers" (as defined in Section 2 of ARTICLE I) and agree to be bound by this Agreement or who are otherwise so bound as provided as set forth in Section 2 of ARTICLE I;

WITNESSETH:

(1) The Employers are parties to a collective bargaining agreement, or supplements thereto, with the Council which requires

-1-

EXHIBIT
B-6

Employer contributions of a certain sum per hour per Employee to a training fund provided in a program to be created for participating employees and established by this trust agreement.

(2) the parties have agreed that such contributions shall be payable to and be deposited in the Trust Fund created and established by this Trust Agreement.

NOW, THEREFORE, in consideration of the premises and in order to establish and provide for the maintenance of said Trust Fund to be known as "THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND" hereinafter referred to as the "Trust Fund," it is mutually understood and agreed as follows.

## ARTICLE I

### Definitions

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Trust Agreement.

### Section 1. WRITTEN AGREEMENT

The term "Written Agreement" shall mean any agreement in writing which specifies the detailed basis on which contributions shall be made to this Trust together with any modification, amendment or renewals thereof, including but not limited to Collective Bargaining Agreements, memoranda of understanding which incorporate by reference Collective Bargaining Agreements or this Agreement, report forms in accordance with which contributions are made and which obligate the Employer to the provisions of this Agreement, or any other agreement obligating the Employer signatory thereto to participate in or be bound by this Agreement.

signatory association, nor any officers, agent, employee or committee member of the Employers, or of any signatory association shall be liable to make contributions to the Fund or be under any other liability to the Fund or with respect to the Training Program, except to the extent that he may be an individual Employer required to make contributions to the Fund with respect to his or its own individual or joint venture operations, or to the extent he may incur liability as a Trustee, as hereinafter provided. The liability of any individual Employer to the Fund, or with respect to the Training Program shall be limited to the payments required by any written agreement with respect to his or its individual or joint venture operations, and in no event shall he or it be liable or responsible for any portion of the contributions due from other individual Employers with respect to the operations of such Employers. The individual Employers shall not be required to make any further payments or contributions to the cost of the operations of the Fund or of the Training Program, except as provided in Section 8 of this Article.

Section 6. Neither the Employers, any signatory association, any individual Employer, the Council, nor any employee shall be liable or responsible for any debts, liabilities or obligations of the Fund or the Trustees.

Section 7. Contributions to the Fund shall be due and payable to the principal office of the Fund and shall be made in regular monthly installments except as otherwise herein provided in Section 9 of this Article II. Each contribution to the Fund shall be made promptly, and in any event on or before the 10th day

of the calendar month in which it becomes due and payable. Each monthly contribution shall include all payments which have accrued in the interim for work performed up to the close of the Employer's payroll period ending closest to the last day of the preceding calendar month. Each monthly contribution shall be accompanied by a report in a form prescribed by the Board of Trustees.

Section 8. The parties recognize and acknowledge that the regular and prompt payment of Employer contributions and Reports to the Fund are essential to the maintenance of the Fund and that it would be extremely difficult, if not, impracticable, to fix the actual expense and damage to the Fund and to the Training Program which would result from the failure of an Employer to pay such monthly contributions in full within the time provided above. Therefore, if any Employer is delinquent in remitting its contributions within the time specified in Section 7 of this Article, the amount of damage to the Fund and Training Program resulting from failure to make reports or pay contributions within the time above specified shall be presumed to be the sum of ten percent (10%) of the amount of the contribution due for each delinquent report or contribution. This amount shall be added as liquidated damages upon the day immediately following the date on which the report or the contribution or contributions become delinquent. Delinquent contributions and penalties shall also bear interest at a rate up to the prime rate of interest as recognized by the First National Bank of Chicago or such other lawful amount as determined by the Trustees from the due date until

delinquency is totally satisfied. The Trustees, however, in their
discretion, for good cause (Trustees shall have sole right to
determine what shall constitute good cause) shall have the right and
power to waive all or any part of any sums due the Fund as liquidated
damages. Failure by any Employer to make the required payments
hereunder shall be deemed a breach of the written agreement
by the Employer and be subject to economic action by the Council in
addition to the other remedies as provided herein. The Trustees may,
at their option, also take legal action to collect all delinquent
amounts owing to the Fund, and parties agree that if the delinquent
account of any Employer is referred to an attorney for collection,
such Employer shall immediately become liable for a reasonable sum
for the attorneys' fee together with an amount equal to all costs
incurred by the Trustees in commencing or prosecuting legal action in
any Court. In such legal action, venue shall be laid at Cook County,
Illinois, as the Fund is administered in such county.

Section 9. In the case of certain Employers who have defaulted
on payments in the past, or who otherwise give the Trustees
reasonable cause to feel insecure as to future contributions, the
Trustees shall have the power to require a bond for the payment of
contributions.

ARTICLE III

Board of Trustees

Section 1. Except as otherwise specifically provided, the
Fund shall be operated and administered by a Board of Trustees
whose membership shall consist of three persons appointed as
trustees by the Association (known as the "Association Appointed

2/7/2014

# LABORERS' PENSION & WELFARE FUNDS

AUDIT  8-1-2010-12-31-2012

EMPLOYER  CBS EXCAVATING & SNOWPLOWING          CODE  34220

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| | HOURS | WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDC/LMCC | RATE | CCA | RATE | LECET | RATE | LECET | RATE | IAF | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ADDITIONAL HOURS** | | | | | | | | | | | | | | | | | | | | | |
| 6-1-2010-5-31-2011 | 560.00 | 5,952.80 | 10.63 | 4,799.20 | 8.57 | 252.00 | 0.45 | 559.78 | 67.20 | 0.12 | 44.80 | 0.08 | 39.20 | 0.07 | | | | | | | 11,714.98 |
| 6-1-2011-5-31-2012 | 840.00 | 10,231.20 | 12.18 | 7,408.80 | 8.82 | 378.00 | 0.45 | 835.22 | 100.80 | 0.12 | 67.20 | 0.08 | 58.80 | 0.07 | | | | | | | 19,081.02 |
| 6-1-2012-5-1-2013 | 1,080.00 | 13,802.40 | 12.78 | 9,741.60 | 9.02 | 540.00 | 0.50 | 1,270.52 | 129.60 | 0.12 | 86.40 | 0.08 | 75.60 | 0.07 | | | | | | | 25,646.22 |
| **MEN NOT REPORTED** | | | | | | | | | | | | | | | | | | | | | |
| **SUBTOTAL** | 2,480.00 | 29,986.40 | | 21,949.60 | | 1,170.00 | | 2,665.52 | 297.60 | | 198.40 | | 173.60 | | | | | | | | 56,442.22 |
| 10% PENALTIES 20% PENALTIES | | 5,997.28 | | 4,389.92 | | 234.00 | | 256.56 | 29.76 | | 39.68 | | 17.36 | | | | | | | | 313.76 10,650.88 |
| AUDIT COSTS | | 1,115.00 | | 1,115.00 | | | | | | | | | | | | | | | | | 2,230.00 |
| ATTORNEY FEES | | 793.49 | | | | | | | | | | | | | | | | | | | 793.49 |
| ACCUM. PENALTIES | | | | | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | | | | | | | | | | | | | | | | | | | | |
| **TOTAL DUE** | | 37,892.17 | | 27,454.52 | | 1,404.00 | | 2,923.28 | 327.36 | | 238.08 | | 190.96 | | | | | | | | 70,440.37 |



EXHIBIT
B-7

# Calibre CPA Group, PLLC

Reconciliation of Differences Per Year

Chicago Laborers
CBS Exc. & Snowplowing
Case: CHLAB-1012-03108
Audit Period: 8/1/2010 - 12/31/2012
Fiscal Year End: May

Manager: Benjamin Vargas
Auditor: Suzanne Uczen

**Fiscal Year Ending:**

| Findings | May 2013 | May 2012 | May 2011 | Total |
|---|---|---|---|---|
| Dollars Not Reported | 39,096.00 | 30,408.00 | 20,356.00 | 89,860.00 |
| Hours Not Reported (Funds) | 1,080.00 | 840.00 | 560.00 | 2,480.00 |
| Hours Not Reported (Dues) | 1,080.00 | 840.00 | 560.00 | 2,480.00 |
| **Dollar Amount Due** | | | | |
| Welfare Fund | 13,802.40 | 10,231.20 | 5,952.80 | 29,986.40 |
| Pension Fund | 9,741.60 | 7,408.80 | 4,799.20 | 21,949.60 |
| Training Fund | 540.00 | 378.00 | 252.00 | 1,170.00 |
| CAICA | 86.40 | 67.20 | 44.80 | 198.40 |
| LDCLMCC | 129.60 | 100.80 | 67.20 | 297.60 |
| LECET | 75.60 | 58.80 | 39.20 | 173.60 |
| Dues | 1,270.62 | 836.22 | 559.78 | 2,666.62 |
| **Total** | 25,646.22 | 19,081.02 | 11,714.98 | 56,442.22 |

| | |
|---|---|
| Liquidated Damages | 793.49 |
| Dues Penalties | 0.00 |
| Dues Shortages | 0.00 |
| Audit Fee | 2,230.00 |
| **Total Amount Due** | 59,465.71 |

Page 2

# Calibre CPA Group, PLLC

Details Report

Local: Chicago Laborers
Contractor: CBS Exc. & Snowplowing
Case: CHLAB-1012-03108

Contract: CAICA

## Source: Hours Worked

| Employee Findings | | 06/2010 | 07/2010 | 08/2010 | 09/2010 | 10/2010 | 11/2010 | 12/2010 | 01/2011 | 02/2011 | 03/2011 | 04/2011 | 05/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GOODMAN, PATRICK L | xxx-xx-xxxx | | | 40.00 | 160.00 | 160.00 | 160.00 | 40.00 | | | | | | 560.00 |
| Total | | | | 40.00 | 160.00 | 160.00 | 160.00 | 40.00 | | | | | | 560.00 |

| Rate Table | | 06/2010 | 07/2010 | 08/2010 | 09/2010 | 10/2010 | 11/2010 | 12/2010 | 01/2011 | 02/2011 | 03/2011 | 04/2011 | 05/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 10.6300 | | | 425.20 | 1700.80 | 1700.80 | 1700.80 | 425.20 | | | | | | 5952.80 |
| Pension Fund | 8.5700 | | | 342.80 | 1371.20 | 1371.20 | 1371.20 | 342.80 | | | | | | 4799.20 |
| Pension Fund | 0.4500 | | | 18.00 | 72.00 | 72.00 | 72.00 | 18.00 | | | | | | 252.00 |
| Training Fund | 0.0800 | | | 3.20 | 12.80 | 12.80 | 12.80 | 3.20 | | | | | | 44.80 |
| CAICA | 0.1200 | | | 4.80 | 19.20 | 19.20 | 19.20 | 4.80 | | | | | | 67.20 |
| LDCLMCC | 0.1200 | | | | | | | | | | | | | |
| LECET | 0.0700 | | | 2.80 | 11.20 | 11.20 | 11.20 | 2.80 | | | | | | 39.20 |
| Total | | | | 796.80 | 3187.20 | 3187.20 | 3187.20 | 796.80 | | | | | | 11155.20 |

## Source: Wages Paid

| Employee Findings | | 06/2010 | 07/2010 | 08/2010 | 09/2010 | 10/2010 | 11/2010 | 12/2010 | 01/2011 | 02/2011 | 03/2011 | 04/2011 | 05/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GOODMAN, PATRICK L | xxx-xx-xxxx | | | 1454.00 | 5816.00 | 5816.00 | 5816.00 | 1454.00 | | | | | | 20356.00 |
| Total | | | | 1454.00 | 5816.00 | 5816.00 | 5816.00 | 1454.00 | | | | | | 20356.00 |

| Rate Table | | 06/2010 | 07/2010 | 08/2010 | 09/2010 | 10/2010 | 11/2010 | 12/2010 | 01/2011 | 02/2011 | 03/2011 | 04/2011 | 05/2011 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0275 | | | 39.98 | 159.94 | 159.94 | 159.94 | 39.98 | | | | | | 559.78 |
| Total | | | | 39.98 | 159.94 | 159.94 | 159.94 | 39.98 | | | | | | 559.78 |

# Calibre CPA Group, PLLC

## Details Report

Local: Chicago Laborers
Contractor: CBS Exc. & Snowplowing
Case: CHLAB-1012-03108

Contract: CAICA

### Source: Hours Worked

| Employee Findings | | 06/2011 | 07/2011 | 08/2011 | 09/2011 | 10/2011 | 11/2011 | 12/2011 | 01/2012 | 02/2012 | 03/2012 | 04/2012 | 05/2012 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GOODMAN, PATRICK L | xxx-xxx-xxxx | | | 160.00 | 160.00 | 160.00 | 120.00 | 120.00 | | | | | 120.00 | 840.00 |
| Total | | | | 160.00 | 160.00 | 160.00 | 120.00 | 120.00 | | | | | 120.00 | 840.00 |

| Rate Table | | 06/2011 | 07/2011 | 08/2011 | 09/2011 | 10/2011 | 11/2011 | 12/2011 | 01/2012 | 02/2012 | 03/2012 | 04/2012 | 05/2012 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare Fund | 12.1800 | | | 1948.80 | 1948.80 | 1948.80 | 1461.60 | 1461.60 | | | | | 1461.60 | 10231.20 |
| Pension Fund | 8.8200 | | | 1411.20 | 1411.20 | 1411.20 | 1058.40 | 1058.40 | | | | | 1058.40 | 7408.80 |
| Training Fund | 0.4500 | | | 72.00 | 72.00 | 72.00 | 54.00 | 54.00 | | | | | 54.00 | 378.00 |
| CAICA | 0.0800 | | | 12.80 | 12.80 | 12.80 | 9.60 | 9.60 | | | | | 9.60 | 67.20 |
| LDCLMCC | 0.1200 | | | 19.20 | 19.20 | 19.20 | 14.40 | 14.40 | | | | | 14.40 | 100.80 |
| LECET | 0.0700 | | | 11.20 | 11.20 | 11.20 | 8.40 | 8.40 | | | | | 8.40 | 58.80 |
| Total | | | | 3475.20 | 3475.20 | 3475.20 | 2606.40 | 2606.40 | | | | | 2606.40 | 18244.80 |

### Source: Wages Paid

| Employee Findings | | 06/2011 | 07/2011 | 08/2011 | 09/2011 | 10/2011 | 11/2011 | 12/2011 | 01/2012 | 02/2012 | 03/2012 | 04/2012 | 05/2012 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| GOODMAN, PATRICK L | xxx-xxx-xxxx | | | 5792.00 | 5792.00 | 5792.00 | 4344.00 | 4344.00 | | | | | 4344.00 | 30408.00 |
| Total | | | | 5792.00 | 5792.00 | 5792.00 | 4344.00 | 4344.00 | | | | | 4344.00 | 30408.00 |

| Rate Table | | 06/2011 | 07/2011 | 08/2011 | 09/2011 | 10/2011 | 11/2011 | 12/2011 | 01/2012 | 02/2012 | 03/2012 | 04/2012 | 05/2012 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dues | 0.0275 | | | 159.28 | 159.28 | 159.28 | 119.46 | 119.46 | | | | | 119.46 | 836.22 |
| Total | | | | 159.28 | 159.28 | 159.28 | 119.46 | 119.46 | | | | | 119.46 | 836.22 |

Page 4

# Calibre CPA Group, PLLC

Details Report

Local: Chicago Laborers
Contractor: CBS Exc. & Snowplowing
Case: CHLAB-1012-03108

Contract: CAICA

### Source: Hours Worked

| | | 06/2012 | 07/2012 | 08/2012 | 09/2012 | 10/2012 | 11/2012 | 12/2012 | 01/2013 | 02/2013 | 03/2013 | 04/2013 | 05/2013 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Employee Findings** | | | | | | | | | | | | | | |
| GOODMAN, PATRICK L | xxx-xx-xxxx | 160.00 | 160.00 | 200.00 | 120.00 | 120.00 | 160.00 | 160.00 | | | | | | 1080.00 |
| Total | | 160.00 | 160.00 | 200.00 | 120.00 | 120.00 | 160.00 | 160.00 | | | | | | 1080.00 |
| **Rate Table** | | | | | | | | | | | | | | |
| Welfare Fund | 12.7800 | 2044.80 | 2044.80 | 2556.00 | 1533.60 | 1533.60 | 2044.80 | 2044.80 | | | | | | 13802.40 |
| Pension Fund | 9.0200 | 1443.20 | 1443.20 | 1804.00 | 1082.40 | 1082.40 | 1443.20 | 1443.20 | | | | | | 9741.60 |
| Training Fund | 0.5000 | 80.00 | 80.00 | 100.00 | 60.00 | 60.00 | 80.00 | 80.00 | | | | | | 540.00 |
| CAICA | 0.0800 | 12.80 | 12.80 | 16.00 | 9.60 | 9.60 | 12.80 | 12.80 | | | | | | 86.40 |
| LDCLMCC | 0.1200 | 19.20 | 19.20 | 24.00 | 14.40 | 14.40 | 19.20 | 19.20 | | | | | | 129.60 |
| LECET | 0.0700 | 11.20 | 11.20 | 14.00 | 8.40 | 8.40 | 11.20 | 11.20 | | | | | | 75.60 |
| Total | | 3611.20 | 3611.20 | 4514.00 | 2708.40 | 2708.40 | 3611.20 | 3611.20 | | | | | | 24375.60 |

### Source: Wages Paid

| | | 06/2012 | 07/2012 | 08/2012 | 09/2012 | 10/2012 | 11/2012 | 12/2012 | 01/2013 | 02/2013 | 03/2013 | 04/2013 | 05/2013 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Employee Findings** | | | | | | | | | | | | | | |
| GOODMAN, PATRICK L | xxx-xx-xxxx | 5792.00 | 5792.00 | 7240.00 | 4344.00 | 4344.00 | 5792.00 | 5792.00 | | | | | | 39096.00 |
| Total | | 5792.00 | 5792.00 | 7240.00 | 4344.00 | 4344.00 | 5792.00 | 5792.00 | | | | | | 39096.00 |
| **Rate Table** | | | | | | | | | | | | | | |
| Dues | 0.0325 | 188.24 | 188.24 | 235.30 | 141.18 | 141.18 | 188.24 | 188.24 | | | | | | 1270.62 |
| Total | | 188.24 | 188.24 | 235.30 | 141.18 | 141.18 | 188.24 | 188.24 | | | | | | 1270.62 |

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768       TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
**034220**

FED. ID NO.: —
PHONE: 742 456 0626

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please
check
here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

CONTRACTOR: CBS Excavating & Snow Plowing
215 Serther Dr Third belle IL
600 ° 0

☐ Change of address
☐ Change in name
☐ Send more forms

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | June 2013 | |
| | | Patrick Goodman | 120 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 120 |
| WELFARE & PENSION | 22.90 | | | 2,748 00 |
| TRAINING | 0.50 | | | 60 |
| TOTAL (ALL FUNDS) | | | | 2808 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
**Laborers' Pension & Welfare Funds**
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____       Employer   CBS Excavating
Union _____       By _____
Signed by an authorized officer, partner or agent only

**EXHIBIT**
B - 8

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY
**11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768**

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE **034220**

FED. ID NO.

PHONE: 847 456 0120

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR: CBS Excavation & Snow Plowing
215 Secton Dr Third ville IL    60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | July 2013 | |
| | 152 | Patrick Goodman | 120 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 120 |
| WELFARE & PENSION | 22.90 | | | 2,748 00 |
| TRAINING | 0.50 | | | 60 |
| TOTAL (ALL FUNDS) | | | | 2808 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to
**Laborers' Pension & Welfare Funds**
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavation | |
|---|---|---|---|---|
| Union | | By | | REMITTANCE FORM |

Signed by an authorized officer, partner or agent only

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY
11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768    TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE: **034220**

FED. ID NO.: _____

PHONE: 847 456 0620

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating & Snow Plowing
215 Secstar Dr Third Lake IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | *Aug* | | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 8160 |
| WELFARE & PENSION | 22.90 | | | 3,664 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3,744 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to

**Laborers' Pension & Welfare Funds**
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating | |
|---|---|---|---|---|
| Union | | By | | REMITTANCE FORM |

Signed by an authorized officer, partner of agent only

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO.
PHONE: 847 456 0120

**CODE**
034220

REPORT FOR HOURS WORKED IN
PERIOD FROM_____ TO_____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating & Snow Plowing
215 Sechar Dr Third Lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Sept 2017 | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 22.90 | | | 3,664 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3744 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavating

By
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY
11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768   TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

| CODE | FED. ID NO |
|------|-----------|
| 034220 | PHONE: 942 456 0120 |

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating & Snow Plowing
215 Sexton Dr Third Lake IL
600 20

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---------------------|-----------|------------------|-------------|
| | | Oct 2013 | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|------|------|-------------|--------|---|
| | | | | 160 |
| WELFARE & PENSION | 22.90 | | | 3,664 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3744 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to
**Laborers' Pension & Welfare Funds**
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating |
|-----------|--|----------|----------------|
| Union | | By | Signed by an authorized officer, partner or agent only |

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO
PHONE: 847 456 0126

CODE
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating & Snow Plowing
215 Sexton Dr Third Lake IL

If you are interested in managing your account online, please register at 600 ≥ 0
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | *Nov 2013* | | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 22.90 | | | 3,664 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3744 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating | |
|---|---|---|---|---|
| Union | | By | | REMITTANCE FORM |

Signed by an authorized officer, partner of agent only

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768     TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
**34220**

FED. ID NO.

PHONE: 7824560126

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR: CBS Excavating & Swmp Sand
215 Souwn Dr Thrd Lake 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Dec | |
| | 152 | Patrick Goodrum | 40 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 40 / 916 |
| WELFARE & PENSION | 22.90 | | | 20 |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 936 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavat |
|---|---|---|---|
| Union | | By | 215 Souwn Dr Thrd |

Signed by an authorized officer, partner of agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com
TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO
PHONE: 742 456 0120

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seventeen Dr Third lake IL
60030

☐ Change of address
☐ Change in name
☐ Send more forms

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Jan 2014 | |
| | 152 | Patrick Goodman | Ø |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 23.90 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | Ø |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
*Signed by an authorized officer, partner or agent only*

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chipwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO _____

PHONE: 847 456 0120

**CODE** 034220

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seuteuru Dr Third lalle IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Feb 2014 | |
| | | | |
| | | Patrick Goodman | Ø |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 23.90 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | Ø |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chllpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____
PHONE: 847 456 0120

**CODE**
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seuteen Dr Third Lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *March* | |
| | | | |
| | | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 23.90 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavat. |
|---|---|---|---|
| Union | | By | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chipwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
**034220**

FED. ID NC
PHONE: P47 456 0020

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____TO_____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Sewtern Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | | |
| | | | |
| | 152 | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 23.90 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE**:The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavate

By
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO.
PHONE: P47 456 0120

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seufeun Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | May 2017 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3,824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

EMPLOYER'S WARRANTY AND ACCEPTANCE:The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33357 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavating
By
Signed by an authorized officer, partner or agent only

REMITTANCE FORM

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO __
PHONE: 847 456 0020

CODE
034220

REPORT FOR HOURS WORKED IN
PERIOD FROM_____TO_____

Please
check
here

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seventeen Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | June 2014 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavate
By
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO.
PHONE: 847 456 0120

**CODE**
034220

REPORT FOR HOURS WORKED IN
PERIOD FROM_____ TO_____

Please
check
here

### Inactive
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

### Final Report
- [ ] Sold (out of) business

CONTRACTOR : CBS Excavating & Snow Plowing
215 Sexteen Dr Third Lake IL
60030

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | July 2014 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavating

By
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO._____
PHONE: P42 K56 0200

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____ TO_____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seuteun Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Aug 2017 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3,824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

EMPLOYER'S WARRANTY AND ACCEPTANCE: The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to
**Laborers' Pension & Welfare Funds**
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

REMITTANCE FORM

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO _____
PHONE: 847 456 0120

CODE
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____ TO_____

Please check here

CONTRACTOR : CBS Excavating & Snow Plowing
215 Sewtern Dr Third Lake EL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Sept 2014 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3,824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO.____
PHONE: 842 456 0120

**CODE**
034220

REPORT FOR HOURS WORKED IN
PERIOD FROM_____TO_____

Please check here

CONTRACTOR : CBS Excavating & Snow Plowing
215 Seuteun Dr Third Lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Oct 2014 | |
| | | | |
| | 152 | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____
Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

**CODE** 034220

FED. ID NO.
PHONE: 847 456 0020

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR: CBS Excavating & Snow Plowing
215 Seufeun Dr Third lake IL 60030

If you are interested in managing your account online, please register at www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Nov 2014 | |
| | 152 | Patrick Goodman | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 23.90 | | | 3824 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 3904 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____
Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chipwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: P47 V56 0120

**CODE**
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snow Plowing
215 Senteen Dr Third Lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Dec 2014 | |
| | | | |
| | 152 | Patrick Goodman | 80 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 80 |
| WELFARE & PENSION | 23.90 | | | 1912 |
| TRAINING | 0.50 | | | 40 |
| TOTAL (ALL FUNDS) | | | | 1952 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
32367 Treasury Center
Chicago, IL 60594-3300

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY
11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO. _____

PHONE: 847-456-0120

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | | TOTAL HOURS |
|---|---|---|---|---|
| | | Jan 2015 | | |
| | 152 | Patrick Goodman | | 0 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 24.70 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the undersigned employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: 847-456 0080

CODE: 034220

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating & Snowplowing
215 Seafore Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Feb 2019 | |
| | | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 24.70 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
**Laborers' Pension & Welfare Funds**
**33367 Treasury Center**
**Chicago, IL 60694-3300**

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner of agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: _847-456-0120_

| CODE | |
|------|--|
| O34220 | |

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____ TO_____

Please check here

CONTRACTOR : _CBS Excavating & Snowplowing_
_215 Seaforer Dr Third lake IL_
_60030_

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | _March 2015_ | |
| | _152_ | _Patrick Goodman_ | _0_ |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|------|------|-------------|--------|--|
| WELFARE & PENSION | 24.70 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | _0_ |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____

Union _____

Employer _CBS Excavating_

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____
PHONE: 847-456-0180

CODE
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | April 2017 | |
| | 152 | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 24.70 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE.** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to

Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating | |
|---|---|---|---|---|
| Union | | By | | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO. _____
PHONE: 847-456-0180

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | May 2015 | |
| | | Patrick Goodman | 40 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 40 |
| WELFARE & PENSION | 24.70 | | | 888 |
| TRAINING | 0.50 | | | 20 |
| TOTAL (ALL FUNDS) | | | | 1008 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____
Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: 847-456-0180

CODE
034220

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seahorse Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | June 2015 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 3,952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4,032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the undersigned employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer CBS Excavating
By
Signed by an authorized officer, partner or agent only

REMITTANCE FORM

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chllpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. :
PHONE: 847 456 0150

**CODE** 034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seafore Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | July | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 3952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer  CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO._

PHONE: 847-456-0150

CODE
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Aug 2015 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 3952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to

Laborers' Pension & Welfare Funds
33267 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____
Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

REMITTANCE FORM

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO._____
PHONE: 847 456 0100

**CODE**
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR: CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Sept 2015 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 3952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

Fund Adm. _____

Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO.

PHONE: 847 456 0180

**CODE** 034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

CONTRACTOR : CBS Excavating & Snowplowing
215 Seafore Dr Third lake IL

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

If you are interested in managing your account online, please register at    60030
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Oct 2015 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 3952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33307 Treasury Center
Chicago, IL 60694-3300

Fund Adm.

Union

Employer    CBS Excavating

By

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: 847 456 0130

CODE
034220

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

Please check here

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seaforer Dr Third lake IL
60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *Nov 2015* | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 24.70 | | | 2952 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4032 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |
| | | | Signed by an authorized officer, partner or agent only |

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO. _____

PHONE: 8724560000

**CODE** 634770

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CAS Excavating & Saw ploaus
215 Section D - Thied 60070

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Dec 2015 | |
| | | Patrick Goodun | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 0 |
| WELFARE & PENSION | 24.70 | | | |
| TRAINING | .50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages A messenger deliveries:
Xerox Co BLO Hinc
LBX 33367
141 W Jackson Blvd Ste 1020
Chicago, IL 60604

Fund Adm. _____    Employer _____

Union _____    By _____

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
034220

FED. ID NO.:
PHONE:

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

CONTRACTOR: CBS Excavating + Snowplowing
215 Seahaven Dr Third Lake
IL 60030

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business

- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

If you are interested in managing your account online, please register at www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Jan 2016 | 0 |
| | | Patrick Goodman | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT |
|---|---|---|---|
| WELFARE & PENSION | 25.80 | | |
| TRAINING | 0.50 | | |
| TOTAL (ALL FUNDS) | | | 0 |

EMPLOYER'S WARRANTY AND ACCEPTANCE The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33367
111 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
**034220**

FED. ID NC.
PHONE:

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business
☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR: CBS Excavating + Snowplowing
215 Seafarer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Feb 2016 | |
| | | Patrick Goodman | 0 |

| FUND | RATE | TOTAL HOURS | AMOUNT |
|---|---|---|---|
| WELFARE & PENSION | 25.80 | | |
| TRAINING | 0.50 | | |
| TOTAL (ALL FUNDS) | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE.** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33557 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
JPMorgan Chase
LBX 33557
141 W Jackson Blvd Ste 1000
Chicago, IL 60604

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE **034220**

FED. ID NO
PHONE:

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating + Snowplowing
215 Seafarer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *March 2015* | |
| | | *Patrick Goodman* | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT |
|---|---|---|---|
| WELFARE & PENSION | 25.80 | | |
| TRAINING | 0.50 | | |
| TOTAL (ALL FUNDS) | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:**The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al, and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
If you are using USPS mail:
Laborers' Pension & Welfare Funds
33357 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33357
111 W. Jackson Blvd Ste 1600
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating
By _____

*Signed by an authorized officer, partner or agent only*

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO _____

PHONE: _____

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CODE
**034220**

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please
check
here

CONTRACTOR : CBS Excavating & Snowplowing
215 Seahaven Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *April 2015* | |
| | | *Patrick Goodman* | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 0 |
| WELFARE & PENSION | 25.80 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

EMPLOYER'S WARRANTY AND ACCEPTANCE:The undersigned employer hereby warrants that this report
accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be
bound to the terms of the current collective bargaining agreement executed between the Construction and
General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further,
the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers'
Pension and Welfare. et al. and accepts all of the terms thereof with the intention of providing benefits to its
laborers

Please complete and return this report with payment to:

If you are using USPS mail
Laborers' Pension & Welfare Funds
36307 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 36307
151 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com
email: FieldDept@chilpwf.com

CODE
**034220**

FED. ID NO.

PHONE:

REPORT FOR HOURS WORKED IN
PERIOD FROM _____ TO _____

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

Please check here

CONTRACTOR : CBS Excavating + Snowplowing
215 Seaflower Dr Thirdlake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | May 2015 | |
| | | Patrick Goodman | 40 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 40 |
| WELFARE & PENSION | 25.80 | | | 1032 |
| TRAINING | 0.50 | | | 20 |
| TOTAL (ALL FUNDS) | | | | 1050 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:
Laborers' Pension & Welfare Funds
33387 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox/JP MO Hurst
LBX 33387
141 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO
PHONE:

**CODE**
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please
check
here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating + Snowplowing
215 Seafarer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | June 2014 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 25.80 | | | 4128 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4208 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the undersigned employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
If you are using USPS mail
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using courier packages & messenger deliveries
Xctex c/o BMO Harris
LBX 33367
111 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chipwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO ____
PHONE: ____

**CODE**
034220

REPORT FOR HOURS WORKED IN ____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating + Snowplowing
215 Seahaven Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business
☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE July 2016 2016 | TOTAL HOURS |
|---|---|---|---|
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 25.80 | | | 4128 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4208 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail,
Laborers' Pension & Welfare Funds,
33307 Treasury Center
Chicago, IL 60694-3300
If you are using courier packages & messenger services
Xerox c/o BMO Harris
LBX 33307
141 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating

By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE **034220**

FED. ID NO. _____
PHONE: _____

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

CONTRACTOR : *CBS Excavating + Snowplowing*
*215 Seahaven Dr Third Lake*
*IL 60030*

☐ Change of address
☐ Change in name
☐ Send more forms

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *Aug 2018* | |
| | | *Patrick Goodman* | *160* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | *160* |
| WELFARE & PENSION | 25.80 | | | *4128* |
| TRAINING | 0.50 | | | *80* |
| TOTAL (ALL FUNDS) | | | | *4208* |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
93357 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33357
141 W Jackson Blvd Ste 1050
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer *CBS Excavating*

By _____
Signed by an authorized officer, partner or agent only.

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID No. _____
PHONE: _____

CODE
**034220**

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating + Snowplowing
215 Seafurer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business
☐ Change of address
☐ Change in name
☐ Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Sept 2014 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 25.80 | | | 4128 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4208 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations, Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:
If you are using USPS mail:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33367
141 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm. _____
Union _____

Employer CBS Excavating
By S K Hill
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE **034220**

FED. ID NO _____
PHONE: _____

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating & Snowplowing
215 Seafarer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| Inactive | |
|---|---|
| ☐ | No Laborers This Month |
| ☐ | No Laborers Until Further Notice |

**Final Report**
| | |
|---|---|
| ☐ | Sold (out of) business |
| ☐ | Change of address |
| ☐ | Change in name |
| ☐ | Send more forms |

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Oct 2011 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 25.80 | | | 4128 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4208 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LUX-33367
141 W. Jackson Blvd Ste 1600
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer CBS Excavating
By SX HW
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chlpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO _____
PHONE: _____

**CODE** O34220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____ TO_____

Please check here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business
☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR : CBS Excavating & Snowplowing
215 Seafurer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Nov 2016 | |
| | | Patrick Goodman | 160 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 160 |
| WELFARE & PENSION | 25.80 | | | 4128 |
| TRAINING | 0.50 | | | 80 |
| TOTAL (ALL FUNDS) | | | | 4200 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33307 Treasury Center
Chicago, IL 60694-3300

If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33367
111 W Jackson Blvd Ste 1000
Chicago, IL 60604

Fund Adm _____

Union _____

Employer CBS Excavating
By _____
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

FED. ID NO.
PHONE:

**CODE**
034220

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please
check
here

**Inactive**
☐ No Laborers This Month
☐ No Laborers Until Further Notice

**Final Report**
☐ Sold (out of) business

☐ Change of address
☐ Change in name
☐ Send more forms

CONTRACTOR: CBS Excavating + Snowplowing
215 Seafurer Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | DEC 2016 | |
| | | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | |
| WELFARE & PENSION | 25.80 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al, and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33357 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33357
141 W. Jackson Blvd Ste 1100
Chicago, IL 60694

Fund Adm. _____
Union _____

Employer CBS Excavating
By _____
*Signed by an authorized officer, partner or agent only*

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE: 034220

FED. ID NO _____
PHONE: _____

REPORT FOR HOURS WORKED IN _____
PERIOD FROM_____ TO_____

Please check here

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

CONTRACTOR: CBS Excavating + Snowplowing
215 Seahaven Dr Third Lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | Jan 2017 | |
| | | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| WELFARE & PENSION | 25.80 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers

Please complete and return this report with payment to:

If you are using USPS mail:
Laborers' Pension & Welfare Funds
33667 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries:
Xerox c/o BMO Harris
LBX 33367
141 W Jackson Blvd Ste 1050
Chicago, IL 60604

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |

REMITTANCE FORM

Signed by an authorized officer, partner or agent only

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768    TELEPHONE 1-708-562-0200 ADMINISTRATION
email: FieldDept@chilpwf.com                              www.chicagolaborersfunds.com

| CODE | |
|---|---|
| **034220** | |

FED. ID NO ____
PHONE: _____

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : *CBS Excavating & Snowplowing*
*215 Seafiner Dr Thirdlake*
*IL 60030*

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *Feb 2017* | |
| | | *Patrick Goodman* | *0* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT |
|---|---|---|---|
| WELFARE & PENSION | 25.80 | | |
| TRAINING | 0.50 | | |
| TOTAL (ALL FUNDS) | | | *0* |

**EMPLOYER'S WARRANTY AND ACCEPTANCE** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail,
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries,
Xerox c/o BMO Harris
LBX 33367
141 W Jackson Blvd Ste 1020
Chicago, IL 60604

Fund Adm. _____

Union _____

Employer *CBS Excavating*
By *[signature]*
Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION AND WELFARE FUNDS FOR CHICAGO & VICINITY

11465 W. CERMAK ROAD, WESTCHESTER, ILLINOIS 60154-5768
email: FieldDept@chilpwf.com

TELEPHONE 1-708-562-0200 ADMINISTRATION
www.chicagolaborersfunds.com

CODE
**034220**

FED. ID NC
PHONE: _____

REPORT FOR HOURS WORKED IN _____
PERIOD FROM _____ TO _____

Please check here

CONTRACTOR : CBS Excavating & Snowplowing
215 Seahaven Dr Third lake
IL 60030

If you are interested in managing your account online, please register at
www.chicagolaborersfunds.com under "Employers" section - click on "Account Login" and "Register".

**Inactive**
- [ ] No Laborers This Month
- [ ] No Laborers Until Further Notice

**Final Report**
- [ ] Sold (out of) business
- [ ] Change of address
- [ ] Change in name
- [ ] Send more forms

| (MUST BE SHOWN) SSN | LOCAL NO. | NAME OF EMPLOYEE | TOTAL HOURS |
|---|---|---|---|
| | | *March 2017* | |
| | | Patrick Goodman | 0 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| FUND | RATE | TOTAL HOURS | AMOUNT | |
|---|---|---|---|---|
| | | | | 0 |
| WELFARE & PENSION | 25.80 | | | |
| TRAINING | 0.50 | | | |
| TOTAL (ALL FUNDS) | | | | 0 |

**EMPLOYER'S WARRANTY AND ACCEPTANCE:** The undersigned employer hereby warrants that this report accurately states all hours worked by all laborers in its employ. In addition, the employer hereby agrees to be bound to the terms of the current collective bargaining agreement executed between the Construction and General Laborers' District Council of Chicago and Vicinity and the relevant Multi Employer Associations. Further, the undersigned hereby expressly accepts and agrees to be bound by the Trust agreements governing Laborers' Pension and Welfare, et al., and accepts all of the terms thereof with the intention of providing benefits to its laborers.

Please complete and return this report with payment to:

If you are using USPS mail
Laborers' Pension & Welfare Funds
33367 Treasury Center
Chicago, IL 60694-3300
If you are using Courier packages & messenger deliveries
Xerox c/o BMO Harris
LBX 33367
111 W Jackson Blvd Ste 1000,
Chicago, IL 60604

| Fund Adm. | | Employer | CBS Excavating |
|---|---|---|---|
| Union | | By | |

Signed by an authorized officer, partner or agent only

**REMITTANCE FORM**

# LABORERS' PENSION & WELFARE FUNDS

EMPLOYER  CBS  EXC SNOWPLOWING

CODE  34220

| | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ADDITIONAL HOURS** | | | | | | | | | | | | | | | | | |
| Jun-13 | 120.00 | 1,605.60 | 13.38 | | | 1,142.40 | 9.52 | 60.00 | 0.50 | 144.30 | 14.40 | 0.12 | 9.60 | 0.08 | 8.40 | 0.07 | 2,984.70 |
| Jul-13 | 120.00 | 1,605.60 | 13.38 | | | 1,142.40 | 9.52 | 60.00 | 0.50 | 144.30 | 14.40 | 0.12 | 9.60 | 0.08 | 8.40 | 0.07 | 2,984.70 |
| Aug-13 | 160.00 | 2,140.80 | 13.38 | | | 1,523.20 | 9.52 | 80.00 | 0.50 | 192.40 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 3,979.60 |
| Sep-13 | 160.00 | 2,140.80 | 13.38 | | | 1,523.20 | 9.52 | 80.00 | 0.50 | 192.40 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 3,979.60 |
| Oct-13 | 160.00 | 2,140.80 | 13.38 | | | 1,523.20 | 9.52 | 80.00 | 0.50 | 192.40 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 3,979.60 |
| Nov-13 | 160.00 | 2,140.80 | 13.38 | | | 1,523.20 | 9.52 | 80.00 | 0.50 | 192.40 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 3,979.60 |
| Dec-13 | 40.00 | 535.20 | 13.38 | | | 380.80 | 9.52 | 20.00 | 0.50 | 48.10 | 4.80 | 0.12 | 3.20 | 0.08 | 2.80 | 0.07 | 994.90 |
| **SUBTOTAL** | 920.00 | 12,309.60 | | | | 8,758.40 | | 460.00 | | 1,106.30 | 110.40 | | 73.60 | | 64.40 | | 22,882.70 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | 128.11 |
| 20% LIQUIDATED DAMAGES | | 2,461.92 | | | | 1,751.68 | | 92.00 | | 110.63 | 11.04 | | 14.72 | | 6.44 | | 4,320.32 |
| AUDIT COSTS | | | | | | | | | | | | | | | | | |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | | | | | | | | | | | | | | | | |
| **TOTAL DUE** | | 14,771.52 | | | | 10,510.08 | | 552.00 | | 1,216.93 | 121.44 | | 88.32 | | 70.84 | | 27,331.13 |



EXHIBIT

B-9

wbbler

# LABORERS' PENSION & WELFARE FUNDS

EMPLOYER: CBS

CODE: 34220

| | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ADDITIONAL HOURS** | | | | | | | | | | | | | | | | | |
| May-14 | 160.00 | 2,140.80 | 13.38 | | 3.80 | 1,523.20 | 9.52 | 80.00 | 0.50 | 192.40 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 3,979.60 |
| Jun-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Jul-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Aug-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Sep-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Oct-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Nov-14 | 160.00 | 1,596.80 | 9.98 | 608.00 | 3.80 | 1,619.20 | 10.12 | 80.00 | 0.50 | 197.60 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,144.80 |
| Dec-14 | 80.00 | 798.40 | 9.98 | 304.00 | 3.80 | 809.60 | 10.12 | 40.00 | 0.50 | 98.80 | 9.60 | 0.12 | 6.40 | 0.08 | 5.60 | 0.07 | 2,072.40 |
| **SUBTOTAL** | 1,200.00 | 12,520.00 | | 3,952.00 | | 12,048.00 | | 600.00 | | 1,476.80 | 144.00 | | 96.00 | | 84.00 | | 30,920.80 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 147.68 | 14.40 | | | | 8.40 | | 170.48 |
| 20% LIQUIDATED DAMAGES | | 2,504.00 | | 790.40 | | 2,409.60 | | 120.00 | | | | | 19.20 | | | | 5,843.20 |
| AUDIT COSTS | | | | | | | | | | | | | | | | | |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | | | | | | | | | | | | | | | | |
| **TOTAL DUE** | | 15,024.00 | | 4,742.40 | | 14,457.60 | | 720.00 | | 1,624.48 | 158.40 | | 115.20 | | 92.40 | | 36,934.48 |

LABORERS' PENSION & WELFARE FUNDS

4/6/17

**EMPLOYER** CBS

**CODE** 34220

| ADDITIONAL HOURS | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| May-15 | 40.00 | 399.20 | 9.98 | 152.00 | 3.80 | 404.80 | 10.12 | 20.00 | 0.50 | 49.40 | 4.80 | 0.12 | 3.20 | 0.08 | 2.80 | 0.07 | 1,036.20 |
| Jun-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| Jul-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| Aug-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| Sep-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| Oct-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| Nov-15 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 235.20 | 19.20 | 0.12 | 12.80 | 0.08 | 11.20 | 0.07 | 4,310.40 |
| MEN NOT REPORTED | | | | | | | | | | | | | | | | | |
| SUBTOTAL | 1,000.00 | 9,980.00 | | 3,992.00 | | 10,696.00 | | 500.00 | | 1,460.60 | 120.00 | | 80.00 | | 70.00 | | 26,898.60 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 146.06 | | | | | | | 165.06 |
| 20% LIQUIDATED DAMAGES | | 1,996.00 | | 798.40 | | 2,139.20 | | 100.00 | | | 12.00 | | 16.00 | | 7.00 | | 5,049.60 |
| AUDIT COSTS | | | | | | | | | | | | | | | | | |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | | | | | | | | | | | | | | | | |
| TOTAL DUE | | 11,976.00 | | 4,790.40 | | 12,835.20 | | 600.00 | | 1,606.66 | 132.00 | | 96.00 | | 77.00 | | 32,113.26 |

# LABORERS' PENSION & WELFARE FUNDS

EMPLOYER  CBS

CODE  34220

| ADDITIONAL HOURS | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| May-16 | 40.00 | 399.20 | 9.98 | 152.00 | 3.80 | 404.80 | 10.12 | 20.00 | 0.50 | 58.80 | 4.80 | 0.12 | 3.20 | 0.08 | 2.80 | 0.07 | 1,045.60 |
| Jun-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| Jul-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| Aug-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| Sep-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| Oct-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| Nov-16 | 160.00 | 1,596.80 | 9.98 | 640.00 | 4.00 | 1,715.20 | 10.72 | 80.00 | 0.50 | 241.20 | 27.20 | 0.17 | 12.80 | 0.08 | 11.20 | 0.07 | 4,324.40 |
| SUBTOTAL | 1,000.00 | 9,980.00 | | 3,992.00 | | 10,696.00 | | 500.00 | | 1,506.00 | 168.00 | | 80.00 | | 70.00 | | 26,992.00 |
| 10% LIQUIDATED DAMAGES | | 1,996.00 | | 798.40 | | 2,139.20 | | 100.00 | | 150.60 | 16.80 | | 16.00 | | 7.00 | | 174.40 |
| 20% LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | 5,049.60 |
| AUDIT COSTS | | | | | | | | | | | | | | | | | |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | |
| ACCUM. INTEREST | | | | | | | | | | | | | | | | | |
| TOTAL DUE | | 11,976.00 | | 4,790.40 | | 12,835.20 | | 600.00 | | 1,656.60 | 184.80 | | 96.00 | | 77.00 | | 32,216.00 |

## DECLARATION OF G. RYAN LISKA

I, G. RYAN LISKA, declare and state as follows:

1.  I am Fund Counsel for Plaintiffs Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (hereinafter, the "Funds"), Plaintiffs in the above-referenced action. This Declaration is submitted in support of the Funds' Motion for Entry of Default Judgment pursuant to Rule 54(b).

2.  Shareholders of the law firm of Allison, Slutsky & Kennedy, out-of-house collection counsel for the Funds, bill the Funds at a rate of $225.00 per hour for shareholders, $195.00 per hour for associates, and $110.00 per hour for paralegals. Affiant, as in-house counsel for the Funds, has first-hand knowledge that the foregoing hourly rates have been found reasonable and have been awarded by many courts in collection proceedings.

3.  G. Ryan Liska, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from University of Iowa in 1997 and a Juris Doctor from John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in November of 2002 and to the bar of the United States District Court for the Northern District in December of 2002. In March 2006, he was admitted to the bar of the United States District Court for the Central District of Illinois. From 2002 to September 2016 he practiced labor and employment law at various firms. In October of 2016, he became in-house counsel for the Laborers' Funds.

4.  Based on the foregoing, $225.00 represents a fair and reasonable market rate for G. Ryan Liska's in-house legal services to the Funds in this matter.



EXHIBIT

C

5.     Patrick T. Wallace received a Bachelor of Arts Degree from the University of Illinois at Urbana-Champaign in 1992 and a Juris Doctor Degree from the University of DePaul College of Law in 1995. He was admitted to the bar of the State of Illinois in November 1995 and to the bar of the United States District Court for the Northern District of Illinois in December 1995. He has also been admitted to the bar of the United States District Court for the Central District of Illinois. He was admitted to the Trial Bar of the Northern District of Illinois on September 20, 2000. From November 1995 to August 2000 he practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson (formerly Katz, Friedman, Schur & Eagle). In September 2000, he became Funds Counsel for the Laborers' Pension Fund and Laborers' Welfare Fund for the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity.

6.     Based on the foregoing, $225.00 represents a fair and reasonable market rate for Patrick T. Wallace's in-house legal services to the Funds in this matter.

7.     Jerrod Olszewski, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Benedictine University in 1993 and a Juris Doctor Degree from the John Marshall Law School in 2002. He was admitted to the bar of the State of Illinois in May, 2002, and to the bar of the United States District Court for the Northern District of Illinois in May, 2002. From May, 2002 to December, 2004, he practiced labor and employment law as an associate at the law firm of Katz, Friedman, Eagle, Eisenstein & Johnson, former out-of-house counsel to the Laborers' Funds, with the majority of his work being spent representing the Laborers' Funds. In December, 2004, he became in-house counsel for the Laborers' Funds.

8.     Based on the foregoing, $225.00 represents a fair and reasonable market rate for Jerrod Olszewski's in-house legal services to the Funds in this matter.

9.  Amy N. Carollo, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Illinois State University in 2000, Masters of Science from University of Illinois at Chicago in 2002 and a Juris Doctor from Chicago-Kent College of Law in 2005. She was admitted to the bar of the State of Illinois in November of 2005 and to the bar of the United States District Court for the Northern District in January 2006. In March 2006, she became in-house counsel for the Laborers' Funds.

10.  Based on the foregoing, $225.00 represents a fair and reasonable market rate for Amy N. Carollo's in-house legal services to the Funds in this matter.

11.  Katherine Mosenson, in-house counsel for the Funds, received a Bachelor of Science Degree from the University of Illinois at Urbana-Champaign in 2009 and a Juris Doctor Degree from the John Marshall Law School in 2014. I was admitted to the bar of the State of Illinois in May 2014, and to the bar of the United States District Court for the Northern District of Illinois in May 2015. From November 2014 through April 2015, I was an administrative law judge at the Illinois Labor Relations Board. In May 2015, I became in-house counsel for the Funds.

12.  Based on the foregoing, $195.00 represents a fair and reasonable market rate for my in-house legal services to the Funds in this matter.

13.  Kelly Carson, in-house counsel for the Laborers' Funds, received a Bachelor of Arts Degree from Purdue University in 2005 and a Juris Doctor Degree from Chicago-Kent College of Law in 2013. She was admitted to the bar of the State of Illinois in May 2014 and to the bar of the United States District Court for the Northern District of Illinois in August 2015. In August 2015, she became in-house counsel for the Laborers' Funds.

14.    Based on the foregoing, $195.00 represents a fair and reasonable market rate for Kelly Carson's in-house legal services to the Funds in this matter.

15.    Exhibit C-1 attached hereto sets forth the time expended to date by Fund Counsel on this matter. As set forth in that Exhibit, we have expended 8.30 hours totaling $1,361.50 in attorneys' fees and costs totaling $465.00.

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

Date: March 9, 2017 _____

_____
G. Ryan Liska

Laborers Pension and Welfare Funds
11465 Cermak Rd.
Westchester, IL 60154

Invoice submitted to:
CBS 3

March 09, 2017

Invoice #10279

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 10/25/2016 | PGL | Draft complaint, initial complaint documents; draft JAS letter; file review; revise | 1.40 110.00/hr | 154.00 |
| | GRL | Meeting with JO to discuss suit to be filed; performed Sec. of State search to determine whether in good standing or dissolved entity; check LPWF; Telephone conference with Union to determine dues compliance; review audit performed by Calibre; draft four count complaint against CBS 3 | 2.30 225.00/hr | 517.50 |
| 10/26/2016 | PGL | ECF complaint, updated status notes, prepared file | 0.30 110.00/hr | 33.00 |
| 11/1/2016 | PGL | Draft letter to defendant; update status notes; access notes | 0.30 110.00/hr | 33.00 |
| | PGL | Received Email from JAS re: service of summons; updated service list emailed GRL | 0.10 110.00/hr | 11.00 |
| 11/2/2016 | PGL | Email from JAS; filed via ECF summons executed; updated status notes and cal. | 0.20 110.00/hr | 22.00 |
| 12/7/2016 | GRL | Telephone conference with Ernie Herlt to discuss lawsuit; audit findings; possible settlement dispute | 0.20 225.00/hr | 45.00 |
| 12/19/2016 | PGL | Draft initial status report | 0.40 110.00/hr | 44.00 |
| 12/27/2016 | PGL | ECF filed initial status report; draft letter to defendant | 0.30 110.00/hr | 33.00 |



EXHIBIT
C-1

CBS 3                                                                Page    2

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 1/4/2017 | GRL | attend court for status | 0.60<br>225.00/hr | 135.00 |
| | GRL | Telephone conference with Ernie Herlt re: submission of past due reports by Jan. 13th | 0.40<br>225.00/hr | 90.00 |
| 1/16/2017 | GRL | Telephone conference with Ernie Herlt re: production of past due reports | 0.20<br>225.00/hr | 45.00 |
| 1/23/2017 | GRL | contact Ernie Herlt re: why he won't produced monthly reports from June 2013 forward as promised | 0.20<br>225.00/hr | 45.00 |
| 1/30/2017 | PGL | Draft letter re: reports due | 0.10<br>110.00/hr | 11.00 |
| 3/9/2017 | PGL | Draft NOM MOD, MED 54(b) and Orders | 1.30<br>110.00/hr | 143.00 |

|  |  |  |
|---|---|---|
| For professional services rendered | 8.30 | $1,361.50 |

Additional Charges :

| Date | Description | Amount |
|---|---|---|
| 10/26/2016 | Filing fee. | 400.00 |
| 11/2/2016 | Service of Summons and Complaint. | 65.00 |

| | |
|---|---|
| Total additional charges | $465.00 |
| Total amount of this bill | $1,826.50 |
| Balance due | $1,826.50 |

### Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| G. Ryan Liska | 3.90 | 225.00 | $877.50 |
| Paralegal | 4.40 | 110.00 | $484.00 |